162 N.J. Super. 275 (1978)
392 A.2d 665
RICHARD A. DIODATO ET AL., PLAINTIFFS,
v.
CAMDEN COUNTY PARK COMMISSION AND THE COUNTY OF CAMDEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 11, 1978.
*278 Mr. William D. McGovern for plaintiff (Messrs. Tanner & McGovern, attorneys).
Mr. Alan P. Bruce for defendant Camden County Park Commission (Messrs. Montano, Summers, Mullen & Manuel, attorneys).
*279 Mr. Elliott Yampell for defendant County of Camden (Messrs. Yampell & Cosentino, attorneys).
CORUZZI, J.S.C.
On September 21, 1974 plaintiff Richard Diodato attended a company picnic at the Cooper River Park. This park is a component of the Camden County Park Commission.
On the date in question plaintiff was engaged in various activities, including a softball game. This game was played on a regular ball field in the park which required a reservation and nominal fee paid by plaintiff's employer. Later in the afternoon the activity shifted to a picnic area near a pavilion known as "Saginaw Lodge." Although plaintiff's employer had secured exclusive use of this area for the day by way of reservation, no fee was required.
Sometime around 4:00 p.m. plaintiff and a coemployee participated in some sort of footrace to the edge of the Cooper River, which is located in the center of the park. This race culminated in a dive into the waters of the Cooper River and tragedy.
Plaintiff, who had never been to this park previously, apparently dove enthusiastically into the river without previously observing its condition. In so doing he struck a partially submerged 55-gallon, blue-painted oil drum of the type the Park Commission utilizes for trash cans. The resulting impact knocked plaintiff unconscious. It was later ascertained that he sustained a fracture of his spinal column at C-5. Diodato is presently a quadriplegic as a result of these injuries.
Plaintiff's various allegations against defendant Camden County Park Commission can be distilled into three major theories. First, that the Commission should have posted "no swimming" signs in the area where the accident occurred and distributed some sort of literature warning of the prohibition on swimming. Second, that the Commission did not adequately maintain the premises in question in that it failed to remove the barrel from the river. Third, *280 that the Park Commission did not promulgate or enforce a policy of prohibition with regard to swimming.
Defendant Park Commission now moves for summary judgment. It asserts that it had no duty with regard to the above allegations by virtue of the immunity provided under the Landowners Liability Act, N.J.S.A. 2A:42A-2 et seq., and the Tort Claims Act, N.J.S.A. 59:1-1 et seq. Plaintiff opposes this motion and further moves to strike the defenses raised by the Park Commission under those statutory provisions.
The legal contentions of both parties have been most ably set forth in the lengthy and learned memorandum supplied. These papers raise many issues with regard to the law as it should apply herein and this court will attempt to address each.
At the very outset it must be noted that plaintiff advances two arguments which, if accepted, would defeat the very basis of his adversary's motion. The first of these appears to be that the Tort Claims Act does not apply here because the premises involved were not state-owned. The second argument is that the Tort Claims Act provides a comprehensive and exclusive statement of a public entity's right to immunity.
The meat of defendant's argument for summary judgment on the provisions of the Tort Claims Act is found in N.J.S.A. 59:4-8, 9. Those sections read as follows:
N.J.S.A. 59:4-8. Neither a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property including but not limited to any natural condition of any lake, stream, bay, river or beach. [Emphasis supplied]
.... .... .... .... .... .... .... .... .
N.J.S.A. 59:4-9. Neither a public entity nor a public employee is liable for any injury caused by a condition of the unimproved and unoccupied portions of the tidelands and submerged lands, and the beds of navigable rivers, streams, lakes, bays, estuaries, inlets and straits owned by the State. [Emphasis supplied]
Clearly these two sections are intended to apply to two different situations. This is borne out by the titles given to *281 each. N.J.S.A. 59:4-8 is entitled "Condition of unimproved public property-immunity," and N.J.S.A. 59:4-9 "Unimproved and unoccupied portions of certain lands  immunity." The first section outlines immunity given a "public entity" when injury is caused by certain conditions of unimproved public property. The second section provides blanket immunity for injury caused by a condition of certain enumerated waterways and lands owned by the State.
To the extent that N.J.S.A. 59:4-9 explicitly applies to state-owned premises, plaintiff's contention is well founded. However, it is clear that a fair reading of N.J.S.A. 59:4-8 would indicate its application to public entities generally. This position is supported by the fact that the Tort Claims Act as a whole has often been applied to public entities other than the State and that the phrase "public entity," without further limitation, is intended to apply to "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3.
As to plaintiff's contention that the Tort Claims Act provides the exclusive grounds for a public entity's right to immunity, this court feels that N.J.S.A. 59:2-1(b) and Trimblet v. State, 156 N.J. Super. 291 (App. Div. 1977), are dispositive authority for applying the provisions of the Landowner's Liability Act to public entities, where warranted by the facts. N.J.S.A. 59:2-1(b) specifically reserves to public entities any defenses that are available to private persons. In Trimblet the Appellate Division specifically held that the Tort Claims Act does not prevent a public entity from seeking additional or alternative grounds for immunity in the provisions of the Landowners Liability Act.
Before proceeding to the issues that require detailed analysis of the two statutory defenses raised by the Park Commission, it should be noted that plaintiff's contention that the Park Commission was negligent in failing to post *282 "no swimming" signs and in failing to enforce its prohibition of swimming in the river, can be dealt with rather quickly.
Plaintiff contends that the Park Commission had knowledge of at least 56 occasions of unauthorized swimming in the Cooper River between the years 1973 and 1975. Plaintiff asserts that this knowledge never encouraged any action by defendant to enforce its prohibition or to advise visitors that such a prohibition existed.
According to the factual statements supplied by the parties, the Park Commission did post numerous "no swimming" signs during a period approximately 12 years prior to the incident herein. Since that time there have been none, however. This does not give the court too much concern because the provisions of N.J.S.A. 59:2-4 apply directly to bar the assertion of such negligence on the part of the public entity. That section of the Tort Claims Act reads as follows:
A public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law. [Emphasis supplied]
Clearly this section extends immunity to the Park Commission from plaintiff's allegation that his injury was proximately caused by that defendant's failure to enforce (by way of signs, literature police action, etc.) its regulation prohibiting swimming in the Cooper River.
All further issues must then be considered as pertaining to plaintiff's contention that the Park Commission acted negligently in allowing a barrel to stray into the river and/or allowing it to remain there for a period of time up to and including the time of the injury which forms the basis of this suit.
Defendant argues that it must be exempted from such liability by the provisions of N.J.S.A. 2A:42A-2 et seq. Known more commonly as the Landowner's Liability Act, *283 that legislation provides that landowners owe no duty to keep their premises safe for use by others in connection with sport and recreational activity or to give warning of any hazardous condition of the land in connection with its use for any such activity. The act goes further to provide that permission to use the premises for recreational activity does not equate with assurance that the premises are safe or constitute the person so using the premises an invitee.
Defendant cites a number of cases in support of its position that it is exempted from liability by the provisions of N.J.S.A. 2A:42A-2 et seq.: Harrison v. Middlesex Water Co. and Clark Tp., 158 N.J. Super. 368 (App. Div. 1977); Magro v. Vineland, 148 N.J. Super. 34 (App. Div. 1977); Odar v. Chase Manhattan Bank, 138 N.J. Super. 464 (App. Div. 1976) certif. den. 70 N.J. 525 (1976). In so doing it maintains that the act is applicable to nonresidential land of a rural or semi-rural nature whereon the enumerated recreational activities are conducted. Defendant asserts that Cooper River Park is part of the "true outdoors" and therefore falls within the holding of the cited cases.
The Park Commission also advances a defense under N.J.S.A. 59:4-8, referred to earlier. In this regard defendant stresses the natural, unimproved character of the parkland as a whole. It also cites two cases from a sister state with similar statutory provisions for its contention that the existence of improvements such as a parking lot, a shelter, fireplaces and toilet facilities, do not sufficiently change the character of the land so as to take it outside the scope of the statute. Fuller v. State, 51 Cal. App.3d 926, 125 Cal. Rptr. 586 (D. Ct. App. 1975); Rendak v. State, 18 Cal. App.3d 286, 95 Cal. Rptr. 665 (D. Ct. App. 1971).
In response plaintiff raises a number of basic contentions as to defendant's claim to immunity under both statutes.
Plaintiff contends that the exclusion from liability offered by N.J.S.A. 2A:42A-2 et seq. is unavailable here because he was an invitee and the statute applies only to the landowner's *284 duty to trespassers and licensees. To support this conclusion plaintiff correctly points out that New Jersey has adopted an "economic benefit" and an "invitation" test to determine when one is an invitee. Under plaintiff's analysis of the facts it argues that Diodato qualified under either test.
Plaintiff has gone to great lengths to establish that the Park Commission actively sought to attract the public to its parks through the use of an extensive publicity campaign. It also points out that his employer was able to obtain exclusive use of the Saginaw Lodge area through a reservation with defendant. It is argued that the publicity, in its magnitude and the attraction of large groups such as plaintiff's company, constituted an express invitation through which plaintiff achieved the status of invitee.
The traditional concept of invitee status is irrelevant under N.J.S.A. 2A:42A-2 et seq. As expressly stated in 2A:42A-3b, permission does not convey invitee status and, as found in 2A:42A-4b, permission granted for consideration will ultimately subject the landowner to liability. Reading these provisions together it becomes clear that the Legislature carved out an "invitee-like" exception to the immunity of the act only where consideration has been paid.
It is clear to this court that the only exception to the purview of this statutory scheme by virtue of status comes from within the statute itself. Therefore any invitation extended by way of promotional efforts on the part of the Park Commission is insufficient to defeat the applicability of the Landowner's Liability Act.
Plaintiff next contends that the immunity of the act is unavailable because consideration was paid for the use of the premises. The factual recitation given the court by both parties indicate that the only fee paid by plaintiff's employer was expressly directed toward the use of a ballfield. Since the accident herein occurred well after plaintiff had left the ballfield, and occurred on premises only permissively *285 used, the exclusion of N.J.S.A. 2A:42A-4b is inapplicable.
Plaintiff rightfully points out that the law pertaining to the Landowner's Liability Act as found in Magro v. Vineland and Odar v. Chase Manhattan Bank, both supra, has established that the act is applicable only to nonresidential, rural or semi-rural unimproved lands. (In this regard, see Boileau v. De Cecco, 125 N.J. Super. 263 (App. Div. 1973), aff'd 65 N.J. 234 (1974), where it was held that the act does not apply to a suburban, backyard swimming pool.)
A reasonable reading of Magro, Odar and the more recent cases in this area leads this court to determine that the nature of the park itself is such as to be within the meaning and purview of N.J.S.A. 2A:42A-2 et seq.
In Odar plaintiff's decedent died when he ran onto an ice-covered pond owned by defendant's predecessor in interest and fell through the ice and drowned. Of special significance is the fact that the pond was bordered by a highway on one side and a gas station on the other. The court held that the character of the surrounding area was of no moment to the applicability of the Landowner's Liability Act.
Plaintiffs also contend that Cooper River Park came into existence out of tidal swamp lands through a large project of dredging, land clearance, irrigation and damming. He contends that this "man-made" quality establishes the improved character of the premises.
In Trimblet v. State, supra, plaintiffs' decedent ventured out onto the state-owned Round Valley Reservoir in a boat. He never returned. Part of the record was a stipulation that the Round Valley Reservoir was created by the State through the construction of certain dams and pumping of water from another state-owned reservoir. Despite the man-made character of this lake, the Appellate Division held that the provisions of 2A:42A-2 et seq. were available to the State as a defense. (Similarly, Harrison v. Middlesex *286 Water Co., 158 N.J. Super. 368 (App. Div. 1978), involved an ice skating accident on a man-made reservoir.)
Plaintiff's most persuasive argument with regard to the character of the land is that the various "improvements" thereon, such as the lodge, toilet facilities, fireplaces, docks, etc., remove this property from the category of unimproved, rural or semi-rural. It is inconceivable that the Legislature intended to so restrict the provisions of the Landowner's Liability Act. In the opinion of this court, all the "improvements" mentioned are merely conveniences or facilities incident to the recreational use of the park as part of the true outdoors. More to the point is the ruling of our Appellate Division in Harrison v. Middlesex Water Co., supra, 158 N.J. Super. 368:
* * * we conclude that the application of the statute depends more upon the nature of the property, in terms of its use for the type of public recreational activity contemplated by the Legislature, than it depends upon the community or neighborhood in which the property is located ... the key factors must be the activity and the kind of property and use to which it is put. [at 381]
In reading the above section of Harrison, it seems clear that the provisions of N.J.S.A. 2A:42A-2 et seq. should be given their broadest interpretation to include all lands bearing a resemblance to the "true outdoors" and, more importantly, which are susceptible to use for the recreational activities enumerated in the statute. Read in this light it is clear that the Cooper River Park is the type of land covered by the Act.
Plaintiff's final contention regarding the applicability of the Landowner's Liability Act is the most persuasive and becomes the one issue upon which the disposition of this entire motion eventually turns. It is argued that the condition which specifically caused the injury herein was not natural but rather clearly artificial and therefore the provisions of N.J.S.A. 2A:42A-2 et seq. do not apply.. Clearly the factual basis of this hypothesis is accurate and in this court's view the legal conclusion is accurate as well.
*287 The clear intention of the act was to exempt landowners from liability when someone is injured on their property while using it for recreational purposes. This proposition is quite distinct from the case in which injury results from an artificial condition which is superimposed on the premises so used. Indeed, the injury producing instrumentality here, a trash barrel, bears absolutely no rational connection with either the premises (the river) or the activity (swimming). Inasmuch as the interaction between the activity and the premises form the basis of the exclusion from liability under the act, when the injury producing instrumentality bears no connection with either, it cannot possibly fall within the legislative intent.
In all the cases cited relative to N.J.S.A. 2A:42A-2 et seq. the injury producing condition was natural. In Magro a child was injured when he struck the bottom of a shallow pond while diving. Clearly, the bottom surface of the pond itself was a natural condition. In Odar plaintiff's decedent fell through the ice on the pond and drowned. The court there specifically pointed out that both the ice and the water thereunder were natural conditions. In Harrison the same was true: plaintiff's decedent fell through ice into the reservoir and drowned. In Trimblet plaintiff's decedent "disappeared" on the waters of the reservoir. His drowning was certainly connected with the water therein.
It is clear that had Diodato been injured as a result of striking the river bed, the immunity of the act would apply. As stated in Krevics v. Ayars, 141 N.J. Super. 511 (Law Div. 1976), the "quality of the hazard" is an important consideration under the act. The injury herein was caused by a trash barrel  something which in no way constitutes a natural condition incident to rivers or the act of swimming. For this reason defendant's motion for summary judgment as based on the provisions of N.J.S.A. 2A:42A-2 et seq. must be denied.
Plaintiff raises much the same argument in attempting to defeat defendant's reliance on the Tort Claims Act. *288 It is clear that the improvements on the premises do not defeat reliance on N.J.S.A. 59:4-8. In addition to the reasoning previously set forth, the official comment to the statute states that the term "unimproved public property" should be liberally construed to allow for desirable improvements incident to the enjoyment of the land. In this regard the California cases interpreting a similar statute are instructive.
In Rendak v. State, 18 Cal. App.3d 286, 95 Cal. Rptr. 665 (D. Ct. App. 1971), plaintiff's decedent was killed while walking along the beach at a state park when a portion of a cliff collapsed and fell on him. In opposition to a motion for nonsuit, plaintiff argued that the park was not "unimproved" property because it included such facilities as restrooms and fireplaces. This argument was rejected and nonsuit was entered.
In Fuller v. State, 51 Cal. App.3d 926, 125 Cal. Rptr. 586 (D. Ct. App. 1975), plaintiff jumped or dove from a ledge into the ocean (at a city beach) and struck the bottom. In attempting to defeat the application of tort claim immunity, plaintiff pointed out that the city had built a jetty in the ocean which made the water more shallow and drew attention to the existence of restrooms, lifeguard towers, etc. The court there decided that whatever the shift in water or sand caused by the city-built jetty, it did not alter the natural character of the premises or the injury producing condition.
This brings us squarly back to the issue of whether the injury producing condition must be natural to bring this accident within the immunity provided by N.J.S.A. 59:4-8. Clearly, in the two cases cited above the injury producing condition was natural. Indeed, this factor was specifically noted and weighed heavily in the decisions.
The Park Commission contends that the findings of the California cases are irrelevant on this issue because the wording of the statute being interpreted there specifically *289 provided for application to injuries resulting from "natural conditions." N.J.S.A. 59:4-8 reads:
Neither a public entity nor public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river, or beach. [Emphasis supplied]
Defendant contends that the use of the word "condition" without the word "natural," followed by the phrase "including but not limited to any natural condition," evidences a clear intent to cover all conditions on unimproved public property. This is an unreasonable interpretation of the legislative intent. The statute clearly applies to the physical condition of the premises itself, not to the superimposition of an artificially created hazard thereon. The words "including but not limited to," as used in N.J.S.A. 59:4-8 refer to the varieties of unimproved public property covered therein rather than the quality of the injury producing condition. Since the injury producing instrumentality in this case bears no relation to the natural condition of the unimproved public property, defendant's motion, in so far as it is based on this section of the Tort Claims Act, must be denied.
For all the reasons set forth above, this court determines that the allegations of negligence asserted against this defendant, in so far as they pertain to the presence of the 55-gallon drum in the Cooper River on the date in question, are not barred by the provisions of N.J.S.A. 2A:42A-2 et seq. or N.J.S.A. 59:1-1. Accordingly, the motion for summary judgment is denied.