162 N.J. Super. 394 (1978)
392 A.2d 1252
PAULINE E. PRIMO AND ARNOLD PRIMO, PLAINTIFFS,
v.
CITY OF BRIDGETON, BRIDGETON RECREATION COMMISSION AND PUBLIC PARK COMMISSION OF THE CITY OF BRIDGETON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 21, 1978.
*396 Mr. Rocco William LoPiano for plaintiffs.
Mr. Charles Gabage for defendants (Messrs. Shapiro, Eisenstat, Capizola, O'Neill & Gabage, attorneys).
MILLER, J.C.C. (temporarily assigned).
This motion for summary judgment requires the court to construe for the first time N.J.S.A. 5:3-30, a statute originally enacted in 1906 providing tort immunity for persons maintaining or operating a public playground for "philanthropic purposes." The Landowners Liability Act, N.J.S.A. 2A:42A-2 et seq., is likewise involved.
Plaintiff allegedly sustained personal injuries while using a slide in a playground located within the Bridgeton City Park. The park is municipally-owned and maintained, and the playground is open to the public without charge. Plaintiff's claims are based on the alleged negligence of defendant in the construction, design, installation and maintenance of the slide.
Defendant's first contention is that the municipality is immune from suit by virtue of N.J.S.A. 5:3-30 as applied through § 59:2-1(b) of the New Jersey Tort Claims Act. N.J.S.A. 5:3-30 provides:
No person maintaining or operating a playground for public use acquired or maintained for philanthropic purposes and not for profit, shall be liable in damages for accidents happening within the bounds of such playground.
The statute, enacted in 1906, has never been judicially construed. Furthermore, there is a dearth of legislative history to aid in its construction. Given the statute's use of the limiting terms "no person" and "for philanthropic purpose" in light of the existing sovereign immunity at the time of its enactment, it is reasonable to conclude that it was the intent of the Legislature for the statute to directly apply only to individuals. In Bisbing v. Asbury Park, 80 N.J.L. 416 *397 (E. & A. 1910), the court, discussing the history of municipal immunity in New Jersey, stated:
It is not controverted and could not well be under the law as expounded in this state, since the year 1840, that in the absence of statute, an action will not lie against a municipal corporation at the instance of an individual who has sustained special damage in consequence of the neglect of such corporation in the performance of a public duty. Freeholders of Sussex v. Strader, 3 Harr. 108; Livermore v. Freeholders, 5 Dutcher 245; aff'd 2 Vroom 507; Pray v. Jersey City, 3 Id. 394; Wild v. Patterson, 18 Id. 406; Carter v. Rahway, 26 Id. 77; aff'd 28 Id. 196; Paterson v. Erie Railroad, 49 Id. 592 [at 418]
Given the then existing general municipal immunity, it further supports the assumption that the statute was intended to apply only to individuals and not municipalities.
This, however, does not end the inquiry, since § 59:2-1(b) of the New Jersey Tort Claims Act provides that any liability of the public entity is subject to any defenses that would be available to the public entity if it were a private person. Therefore it is necessary to determine if the municipality's ownership would comply with N.J.S.A. 5:3-30 if it were a private person.
Under the facts of the case at bar, the municipality was maintaining and operating a playground for public use. The municipality was not operating the playground or the park for profit and there was no fee charged for the use of the playground. The issue then narrows to whether a municipality in operating a playground within a park is doing so for "philanthropic purposes." That the term "philanthropic purposes" is not rigidly defined is best illustrated by the opinion of the New York Court of Appeals in Westchester County, etc. v. Mengel, 292 N.Y. 121, 54 N.E.2d 329 (1944):
The terms "philanthropic" and "eleemosynary" are not technical words of art or words which have been defined by statute or which have acquired a rigid meaning by judicial construction. They describe a field without established land marks. Often, perhaps ordinarily, *398 these words denote a purpose to promote the welfare of mankind by works of charity. Sometimes they are used in broader sense to denote an unselfish purpose to advance the common good in any form or manner. Such words reflect the context in which they are used and change in color and in scope accordingly. [292 N.Y. at 125; 54 N.E.2d at 330]
Websters Third New International Dictionary defines "philanthropy" as "goodwill towards one's fellowmen especially as expressed through active efforts to promote human welfare."
In Thorp v. Lund, 227 Mass. 474, 116 N.E. 946 (Sup. Ct. Err. 1917), the court delves into the history of the meaning of the word "philanthropic":
The word "philanthropic" is almost if not quite synonymous with the word "charity", at least as it was used at the time of the enactment of St. 43 Elizabeth, c. 4, about which centers so much of the law concerning charitable uses. That is illustrated * * * by the nearly contemporaneous use of the word "charity" in the King James Version of the familiar thirteenth chapter of First Corinthians, while the Revised Version translates the same Greek word as "love". [227 Mass. at 480, 116 N.E. at 949]
Despite the broad definitions of "philanthropic," it is the conclusion of this court that a municipality, in operating a playground, is not doing so philanthropically. Although no admission is charged, the municipality in a very real way exacts a charge of the users through its taxing scheme. In a practical sense the municipality is not acting charitably since its revenues, which are gained through taxation, are collected of the municipality's residents as a whole. If a private person were to collect revenues from all landowners and then use such funds to maintain a park, it would not be acting philanthropically since the monies had come, not from his own resources, but rather from everyone's.
The municipality is acting under a municipal purpose, rather than a philanthropic purpose in operating the playground. In Fahey v. Jersey City, 52 N.J. 103, 108-109 (1968), the Supreme Court applied the traditional governmental *399 v. proprietary function test as to municipal operation of playgrounds, weighing such factors as whether the activity was historically engaged in by local government, whether it is uniformly furnished today and whether it is within the imperative public duty imposed on a municipality as agent of the State, and came to the conclusion that:
* * * we cannot view the operation of municipal parks and playgrounds as other than a governmental function. "Public parks, open spaces, playgrounds and places for public resort, rest and recreation are facilities anciently provided by local government". Coleman v. Edison Tp., 95 N.J. Super. 600, 604 (App. Div. 1967). And whether such municipal facilities are of ancient or modern origin, they are today so intimately related to the general welfare that scarcely a city exists without recreational areas set aside for public enjoyment. 10 McQuillin, Municipal Corporations (3d ed. 1966), § 28.50, p. 163. Private sources do not and probably cannot fulfill the public need for such areas. Further, there is no indication that the playground facilities in question were operated for profit, for revenue, or for any reason other than to provide for the public health and welfare. Also, while provision of parks and playgrounds may not be a statutory requirement (see N.J.S.A. 40:61-1; N.J.S.A. 40:61-22.21; N.J.S.A. 40:184-1; N.J.S.A. 40:37-201.1), the critical urban need for such recreational areas has, as a practical matter, made their provision a common practice of modern municipalities. [at 109]
Therefore the operation by the municipality of a playground is a municipal purpose and not a philanthropic purpose, as it is part of the public health and welfare. Furthermore the legislative has seen fit to declare that the operation of parks by municipalities is a proper municipal purpose in N.J.S.A. 40:61-1.
Since it is a municipal purposs and not a philanthropic purpose, the defense of immunity afforded by N.J.S.A. 5:3-30 is not applicable and therefore the municipality is not immunized from suit.
Defendant secondly maintains that plaintiff's claims are barred by the Landowners Liability Act, N.J.S.A. 2A:42A-2 et seq. N.J.S.A. 2A:42A-2 provides:
*400 As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.
N.J.S.A. 2A:42A-3 absolves the property owner from any duty of care toward those whose actions are encompassed by § 2 by providing:
a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes;
b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.
In N.J.S.A. 59:2-1(b) the Tort Claims Act provides:
Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.
Therefore the public entity is entitled to assert the defenses that a private property owner has in like circumstances. Trimblett v. State, 156 N.J. Super. 291, 295 (App. Div. 1977). Magro v. Vineland, 148 N.J. Super. 34, 39 (App. Div. 1977). This necessitates analysis of the Landowners Liability Act to determine if the use of a slide in a munncipal playground is within the activities covered.
The predecessor statute, N.J.S.A. 2A:42A-1 (repealed, L. 1968, c. 73, § 4 (1967)), provided immunity to the *401 owners of woodlands and agricultural lands from injuries suffered by hunters and fishermen on their property. The superseding statute, by changing the categories of land protected by replacing the words "woodlands and agricultural lands" with the word "premises" and by expanding the description of activities, expanded the scope of the immunity granted by the statute. Odar v. Chase Manhattan Bank, 138 N.J. Super. 464, 468 (App. Div. 1976), certif. denied 70 N.J. 525 (1976); Scheck v. Houdaille Const. Materials, Inc., 121 N.J. Super. 335, 341 (Law Div. 1972); O'Connell v. Forest Hill Field Club, 119 N.J. Super. 317, 320 (Law Div. 1972). Although the new statute expanded the activities encompassed, it was not intended to apply to all categories of land.
Prior adjudications have held that "[i]t is clear that the statute was intended to apply to nonresidential, rural or semi-rural land whereon enumerated sports and recreational activities are conducted." Odar v. Chase Manhattan Bank, supra; Boileau v. DeCecco, 125 N.J. Super. 263, 267 (App. Div. 1973), aff'd 65 N.J. 234 (1974).
In all the cases in which the municipality has been held immune under the Landowners Liability Act the injury causing condition was natural. In Magro plaintiff was injured upon striking bottom of a pond. In Odar the plaintiff's decedent drowned upon falling through thin ice on a pond. In Trimblett plaintiff's decedent drowned in a reservoir. And in Harrison v. Middlesex Water Co., 158 N.J. Super. 368 (App. Div. 1978), plaintiff's decedent fell through thin ice on a pond.
In contrast, when the injury causing condition was artificial, no immunity from suit was found under the Landowners Liability Act. In Krevics v. Ayars, 141 N.J. Super. 511 (Law Div. 1976), the condition causing injury was a cable which defendant had erected to halt minibikes. In Boileau v. DeCecco the condition was a swimming pool in a residential setting.
*402 In Diodato v. Camden Cty. Park Comm'n, 162 N.J. Super. 275 (Law Div. 1978), plaintiff, while driving, struck a submerged 55-gallon drum in a dammed river. The court concluded that a county park, despite various improvements such as fireplaces, toilet facilities, docks, ballfields and a lodge, was still land within the Landowners Liability Act. The court stressed (at 286) that the provisions of the act "should be given their broadest interpretation to include all lands bearing a resemblance to the `true outdoors' and more importantly, which are susceptible to use for the recreational activities enumerated in the statute."
In Diodato the court developed a test under which the relationship between the injury-producing instrumentality, the premises and the activity involved must be scrutinized. Where the injury-causing instrumentality bears no rational connection with either the premises or the activity, the act does not provide immunity. The court found that a submerged 55-gallon drum bore no rational connection with either the park or the diving involved.
The facts presented here are distinguishable. The slide involved does bear a rational connection with a municipal park and it bears a direct connection with the activity involved, namely, the use of that very slide. Therefore, under the test set up in Diodato, when the injury-producing instrumentality is a slide in a municipal park, the act creates immunity.
This approach, however, is not in accord with the analysis used by the Appellate Division in Boileau. In Boileau the court emphasized that the activities covered by the act are "those conducted in the true outdoors, not in someone's backyard." 125 N.J. Super. at 267. The use of a slide is common in suburban residential settings as part of a swing set. Furthermore, although Diodato concludes that the provisions of the act should be given their broadest interpretation, the Appellate opinion in Boileau is directly contra, stating (at 268). "The statute being in derogation *403 of the common law and public policy should be strictly construed".
Following the ruling of the Appellate Division to strictly construe the statute, and given the line of appellate cases which draws a distinction between improved and unimproved land, and natural and artificial injury-producing conditions, immunity does not attach when a person is injured using a slide in a park. The slide represents both an improvement and an artificial condition and as such the Landowners Liability Act does not create immunity.
For the above reasons the motion for summary judgment is denied.