LaShonda Watson, by her father
and next friend, George W. Watson,
and George W. Watson, individually, appellees, v.
City of Omaha, a municipal corporation, appellant.

312 N.W.2d 256

Filed November 6, 1981.  No. 43488.

Herbert M. Fitle, Omaha City Attorney, and James E. Fellows for appellant.

John H. Bernstein of Higgins & Okun for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

On Friday, June 30, 1978, LaShonda Watson, age 2½ years, fell from a slippery slide located in Lake James Park and suffered a fractured leg. This action was brought by her father and next friend under the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1977), to recover damages from the defendant, City of Omaha, which owned and operated the public park. The District Court entered judgment in favor of the plaintiff in the total amount of $6,086.85. Although the City of Omaha assigns several errors in this appeal, including the sufficiency of the evidence to support the judgment, contributory negligence of the plaintiff and her parents, and the absence of negligence on the part of the defendant, the principal issue, and the one upon which a decision in this case turns, is the applicability of the Recreation Liability Act, Neb. Rev. Stat. §§ 37-1001 et seq. (Reissue 1978), to a municipality. We reverse and dismiss the action.

Sometime during the afternoon of the date of the accident, the plaintiff, together with her 10-year-old brother Kevin, two cousins, a sister, and a friend of Kevin's, all being 12 years of age or younger, went to the park to play. The children were playing on the slide in spite of the fact that they had noticed that the greater portion of the left handrail had been cut off and was missing. Both Kevin and LaShonda were on the second step from the platform when one of the cousins started doing a flip at the top of the slide. As a result of this activity, Kevin told LaShonda to get out of the way so that she would not get kicked. LaShonda started down,

holding on to the upper part of the left handrail that was still in place, but when she got to the point where the rail was missing she fell to the ground, fracturing her leg.

Witnesses provided conflicting accounts as to how long the handrail had been missing. Plaintiffs' witnesses stated the rail had been missing for approximately 2 weeks prior to the accident, while the maintenance people of the City of Omaha testified that it was in place as late as the morning of the accident. There was also evidence that the rail had been cut with a pipe cutter and that the ends of the rail where cut were not rusty. The City of Omaha was notified of the accident late that same afternoon by LaShonda's father. Mr. Watson testified further to observing that repairs had been made to the slide by the following Monday.

The Recreation Liability Act, particularly at §§ 37-1001, 37-1002, and 37-1005, provides in part that the purpose of the act is to "encourage owners of land to make available to the public land . . . for recreational purposes by limiting their liability . . ." and, consequently, "an owner of land owes no duty of care to keep the premises safe for . . . use by others for recreational purposes, or to give any warning of a dangerous condition . . ." except that liability is not limited "for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity . . . ." The Political Subdivisions Tort Claims Act provides generally at §§ 23-2402(4) and 23-2407 that a political subdivision shall be liable for the negligent acts or omissions of its employees "in the same manner, and to the same extent as a private individual under like circumstances . . . ."

At the conclusion of all the evidence the district judge found that the damages to the plaintiff, as previously related, were a proximate result of the negligence of the City of Omaha without any contributory negligence on the part of the plaintiff or her parents, that the negligence of the City did not rise to the level of a willful or

malicious failure to guard or warn against a dangerous condition, but that the Recreation Liability Act, §§ 37-1001 et seq., did not apply to the defendant.

All the findings of fact made by the District Court are amply supported by the record, and therefore we cannot say that they are clearly wrong. Accordingly, they will not be disturbed on appeal. *Miles v. School Dist. No. 138*, 204 Neb. 105, 281 N.W.2d 396 (1979). Therefore, if the legal conclusion of the trial court that the Recreation Liability Act does not apply to the City of Omaha is proper, the judgment should be affirmed. Otherwise, it must be reversed and the case dismissed.

In support of the ruling of the District Court, the plaintiffs insist that it is necessary to turn to the legislative history of the Recreation Liability Act in order to determine the intent of the Legislature. In support of this position, plaintiffs cite the case of *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 227, 281 N.W.2d 762, 767 (1979), where we said: "Where the language used in a statute is ambiguous, recourse should be had to the legislative purposes." However, plaintiffs overlook the admonition contained in *State ex rel. Halloran v. Hawes*, 203 Neb. 405, 279 N.W.2d 96 (1979), that a statute is open to construction only where the language used requires interpretation or may reasonably be considered to be ambiguous. Equally applicable is the following language from *Ragland v. Norris P. P. Dist.*, 208 Neb. 492, 497, 304 N.W.2d 55, 58 (1981): "'"A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute."'"

The conclusion reached by the District Court is not

without authority. In *Goodson v. Racine*, 61 Wis. 2d 554, 213 N.W.2d 16 (1973), that court, in construing a statute similar to ours, concluded: "Thus, the legislative intent of the statute is obvious and we hold that sec. 29.68, Stats., is not applicable to a municipality so as to limit its liability for persons injured while present on its property. The statute must be strictly construed so as to limit its effect to private landowners." *Id.* at 559, 213 N.W.2d at 19. In support of its position, the Wisconsin court quoted from the legislative act establishing this particular statute: "'An Act to create 29.68 of the statutes, relating to the limitations on liability of land-owners who open *private* lands for recreational purposes.' (Emphasis supplied.)" No such statutory purpose appears in 1965 Neb. Laws, Ch. 193, p. 589, which created §§ 37-1001 et seq. See, also, *Loney v. McPhillips*, 268 Or. 378, 521 P.2d 340 (1974), wherein, by dicta, the Oregon Supreme Court suggested that the legislative purpose in enacting a similar act was to "encourage private owners to make their land available to the public for recreational purposes," and *Metropolitan Dade County v. Yelvington*, 392 So. 2d 911 (Fla. App. 1980), in which the court, without discussion or explanation, simply stated that its recreation liability act did not apply to a county.

However, to the contrary, and applying such acts to government ownership, are *Magro v. City of Vineland*, 148 N.J. Super. 34, 371 A.2d 815 (1977); *Stone Mountain Mem. Assn. v. Herrington*, 225 Ga. 746, 171 S.E.2d 521 (1969); *Rushing v. State, Through La. Health, Etc.*, 381 So. 2d 1250 (La. App. 1980); *Smith v. United States*, 383 F. Supp. 1076 (D. Wyo. 1974); *McClain v. United States*, 445 F. Supp. 770 (D. Or. 1978); *Gard v. United States*, 594 F.2d 1230 (9th Cir. 1979), construing Nevada's "sightseer statute"; *Hahn v. United States*, 493 F. Supp. 57 (M.D. Pa. 1980); and *Moore v. City of Torrance*, 101 Cal. App. 3d 66, 166 Cal. Rptr. 192 (1979). It should be noted that *Nelsen v. City of Gridley*, 113 Cal. App. 3d 87, 169 Cal. Rptr. 757 (1980), from the Court of Appeals of a dif-

ferent district, contains language critical of *Moore* and suggests that the application of the recreation liability act was limited to private owners. However, the statutes in California relating to governmental tort immunity vary in degree and complexity from our Political Subdivisions Tort Claims Act so that no clear-cut analogy can be made.

We may concede for the sake of argument that the original purpose of the "recreational liability acts" was to encourage private landowners to offer their lands for use by the public. See *Suggested State Legislation*, Vol. XXIV, Council of State Governments (1965), wherein it is stated at 150: "The suggested act which follows is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from malicious or willful acts of the owner." We are also mindful of the reasoning of the Court of Common Pleas of Centre County, Pennsylvania, in an unreported opinion referred to in *Hahn v. United States, supra.* In that opinion, the state court found that at the time of passage of the Recreation Use of Land and Water Act, the Commonwealth already enjoyed sovereign immunity from tort actions and therefore it was not the intent of the Legislature to grant such "redundant immunity" by including the Commonwealth within the definition of "owner" as contained in the act.

However, we must consider the language of the Political Subdivisions Tort Claims Act, previously cited, which subjects a political subdivision to liability for the negligent acts or omissions of its employees "in the same manner, and to the same extent as a private individual under like circumstances." We did say in *Koepf v. County of York*, 198 Neb. 67, 71, 251 N.W.2d 866, 869 (1977), that "[t]he liability of a political subdivision under the Political Subdivisions Tort Claims Act is not an absolute liability, but consists of such liability as would exist in a private person or cor-

poration without that immunity." As stated in *Primo v. Bridgeton*, 162 N.J. Super 394, 400, 392 A.2d 1252, 1256 (1978): "Therefore the public entity is entitled to assert the defenses that a private property owner has in like circumstances."

Whatever the Legislature's intent was at the time of the enactment of the Recreation Liability Act, we believe that the definition of owner—"the term owner includes tenant, lessee, occupant, or person in control of the premises"—is sufficiently broad to cover a public entity. In *Stone Mountain Mem. Assn. v. Herrington, supra*, the Georgia court stated at 748-49, 171 S.E.2d at 523: "Defendants . . . contend that the 1965 Act was intended to apply merely to privately owned land . . . . Nothing on the face of this Act indicates in any way an intention on the part of the legislature to so limit its effect."

The Legislature, in enacting the Political Subdivisions Tort Claims Act and thereby declaring a political subdivision responsible for its torts in the same manner as a private individual, is presumed to have knowledge of previous legislation, including the Recreation Liability Act. *Wahlers v. Frye*, 205 Neb. 399, 288 N.W.2d 29 (1980). Having placed no limitation upon this declaration or upon the definition of "owner" in the Recreation Liability Act, we believe that the intent of the Legislature, as reflected by the clear language of both statutes, was to grant the same rights and privileges to governmental and private landowners alike.

Slippery slide activities are not specifically included within the definition of recreational purposes contained in the Recreation Liability Act. "[T]he term recreational purposes shall include, *but not be limited to*, any one or any combination of the following: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, scenic, or scientific sites, *or*

*otherwise using land for purposes of the user."* (Emphasis supplied.) § 37-1008(3). However, we believe that definition to be broad enough to include the normal activities afforded by public parks.

We therefore conclude that the term "owner of land," as used in the Recreation Liability Act, includes a political subdivision. This was the principal issue upon which the parties tried this action, and which we now determine was incorrectly decided by the trial court. However, under the record made in this case we are obligated to follow the findings of fact made by the District Court that there was no "willful or malicious failure to guard or warn" on the part of the defendant, and consequently we must conclude that no liability attached to the City of Omaha. The judgment of the District Court is reversed and plaintiffs' action is ordered dismissed.

REVERSED AND DISMISSED.

WHITE, J., dissenting.

I would agree with the cases cited in the majority opinion holding that absent anything on the face of the act indicating an intent to apply the Recreation Liability Act to municipalities, the act clearly does not apply.

The Recreation Liability Act was passed in 1965, at which time political subdivisions were immune from liability. It is clear from the legislative history that the act was passed to encourage private landowners to make their land and water areas available for recreational purposes such as fishing and hunting. There was no need to pass such an act to limit the liability of political subdivisions since they were already immune.

In 1969 the Political Subdivisions Tort Claims Act was adopted. In the absence of any legislative history, the majority presents that the Legislature played a great game of "now you have it, now you don't." Under the majority interpretation of the Political Subdivisions Tort Claims Act, the Legislature in reality retained

most of the immunity the act purported to surrender. We have today gutted the act.

Under the majority opinion, the Recreation Liability Act would not apply to activities such as swimming pools, picnic shelters, organized softball leagues, zoos, stadiums, and auditoriums, although it would presumably apply outside the boundaries where those activities take place. If an identical condition is present inside the boundaries of a swimming pool area, and outside, the person inside injured thereby might recover while the nonpaying person outside could not, under the identical circumstances. I find it difficult to believe the Legislature intended such a result.

I agree with the conclusions of the trial court that allowing the dangerous condition to exist for 2 weeks on an implement used principally by children of tender years was negligence. The legislative history makes it clear that the Legislature, in passing the Recreation Liability Act, intended only to limit the liability of owners of private lands. I would affirm.

McCown, J., joins in this dissent.