**Karen WEBER and Robert J. Weber, Plaintiffs,**

**v.**

**The UNITED STATES of America, Defendant.**

**No. Civ.A. 96–4610 SSB.**

United States District Court, D. New Jersey.

Jan. 26, 1998.

Robert L. Gutman, Stephan R. Leone and Associates, L.L.C., Toms River, NJ, for Plaintiffs.

Irene Dowdy, United States Attorney's Office, Trenton, NJ, for Defendant.

## AMENDED OPINION ON MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

BROTMAN, District Judge.

Presently before this Court is the defendant United States's ("Government") Motion to Dismiss plaintiffs Karen and Robert Weber's Complaint pursuant to Fed.R.Civ.P. 12(b)(1), (6) or, in the alternative, for Summary Judgment pursuant to Fed.R.Civ.P. 56.

## I. FACTS AND PROCEDURAL BACKGROUND

The following facts are not contested. On June 4, 1994, plaintiff Karen Weber ("Plaintiff") was using a swing set in Willow Pond Park. While she was on the swing set, a metal yoke that was holding the swing chain fractured and released the swing chain, causing her to fall to the ground. The fall caused her bodily injury, in addition, the metal yoke fell and hit Plaintiff on her head causing a puncture wound.

Willow Pond Park is located on the premises of the Fort Dix Military Reservation. The Park is owned by the United States of America. It was opened in May 1984 and has been in continuous use since then. The area of the Fort Dix Military Reservation where the Park is located is an "open" military base, i.e., there is unrestricted access to that portion of Fort Dix. The Park itself is open for use by the general public.

Willow Pond Park comprises approximately thirty-five (35) acres. There is various recreational equipment and facilities located on the Park's premises, including: swing sets, picnic tables, barbeques, park benches, basketball courts, a large pond, and a pavilion. A nominal fee is charged for use of the pavilion on those occasions when it is reserved in advance for use by a particular group. No fee of any kind is charged for access to or use of any other portion of the Park.

## II. DISCUSSION

■ The Government seeks dismissal of Plaintiffs' Complaint for lack of subject matter jurisdiction.[1] Specifically, it contends that this Court lacks subject matter jurisdiction because Plaintiffs have no cause of action under the substantive law of New Jersey.

### A. The Federal Tort Claims Act

■ "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). A claim against the United States is barred for lack of subject matter jurisdiction unless it falls within an applicable waiver of sovereign immunity. *See Mitchell,* 445 U.S. at 538. "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed'" by Congress. *Id.* (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)).

■ The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, grants a limited, qualified waiver of the federal government's sovereign immunity. It unequivocally "waives sovereign immunity as to claims against the United States for money damages for injury caused by the negligent or wrongful act or omission of a government employee acting within the scope of his employment 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Beneficial Consumer Discount Co. v. Poltonowicz,* 47 F.3d 91, 95–96 (3d Cir.1995) (quoting 28 U.S.C. § 1346(b)). A plaintiff may recover against the United States only to the extent that recovery would

be permitted under the substantive tort law of the state where the complained of conduct took place. *Ciccarone v. United States,* 486 F.2d 253, 257 (3d Cir.1973). The waiver of the United States' sovereign immunity may not be enlarged by the courts, and its consent to be sued must be construed strictly in favor of the sovereign. *See United States v. Nordic Village,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

■ The FTCA did not itself create a substantive cause of action against the United States. Rather, it conferred a procedural remedy by which substantive state law could be applied against the federal government. Therefore, in each FTCA case the "controlling question is whether the substantive law of [the state where the alleged wrong occurred] permits ... recovery from the United States under the facts of th[e] case." *Certain Underwriters at Lloyds' v. United States,* 511 F.2d 159, 161 (5th Cir.1975). In this case, the substantive law of New Jersey governs because it is the state where the complained of conduct took place.

### B. The New Jersey Playground Act

The Government contends that Plaintiffs have no cause of action because the New Jersey Playground Act ("Playground Act"), N.J.Stat.Ann. § 5:3–30, provides immunity against tort liability in this case. The Playground Act states:

> No person maintaining or operating a playground for public use acquired or maintained for philanthropic purposes and not for profit, shall be liable in damages for accidents happening within the bounds of such playground.

The Playground Act has only been judicially construed once in *Primo v. City of Bridgeton,* 162 N.J.Super. 394, 392 A.2d 1252 (Law Div.1978), a case factually similar to the one presently before this Court. In *Primo,*

---

1. Since the United States asserts that this Court lacks subject matter jurisdiction over the action because a private person would not be liable to Plaintiff under New Jersey law, the instant motion is appropriately treated as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). Accordingly, in resolving a Rule 12(b)(1) motion, this Court is not restricted to the face of the pleadings and may review evidence, including affidavits or declarations, to resolve factual questions bearing on the jurisdictional issue. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

Plaintiff sustained personal injuries while using a slide in a playground located within a municipal park. *Id.* 392 A.2d at 1253. She sued the municipality claiming it was negligent in constructing, designing, installing, and maintaining the slide. *Id.* The court held that the municipality was not entitled to immunity under the Act because it was not maintaining the playground for "philanthropic purposes," as required by the Act. *Id.* at 1254–55.

In reaching its holding, the court chose to adopt a very narrow definition of "philanthropic purpose." The court adopted a definition of "philanthropic" synonymous with "charitable." *Id.* at 1254. The fact that the municipality was not maintaining the playground for profit and there was no fee charged for the use of the playground was not enough to establish that the playground was operated for a "philanthropic purpose." *Id.* at 1254. The court still found that the municipality was not acting charitably since it relied on revenues gained through taxation to maintain the playground. *Id.* Instead, it found that the municipality maintained the playground for "municipal purposes," for the "public health and welfare." *Id.* at 1255. The court, therefore, concluded that the municipality was not entitled to immunity under the Playground Act.

■ The Government has provided no evidence to show that it maintains the Willow Pond Park playground for charitable or philanthropic purposes. Rather, it appears that, like the playground in *Primo,* the Government maintains the playground for "municipal purposes;" that is, it uses revenues gained through taxation dollars to maintain the playground for the public health and welfare. The Playground Act, therefore, can not at this point provide the Government with relief from tort liability in this case.[2]

**2.** The Government argues that the reasoning in *Primo* has limited applicability to actions against it under the FTCA because its liability is that of a private person under state law, and not the liability of a municipality or other state government body. The *Primo* court, however, addressed this argument when it dealt with a similar provision under the New Jersey Tort Claims Act, N.J.Stat. Ann. 59:2–1(b), which provides that any liability of the public entity is subject to any defenses that

## C. The New Jersey Landowner's Liability Act

The Government also contends that Plaintiffs have no cause of action because the New Jersey Landowner's Liability Act ("LLA"), N.J.Stat.Ann. § 2A:42A–2 *et seq.,* provides immunity against tort liability in this case. As amended in 1991, and effective January 18, 1992, the LLA provides in pertinent part:

**2A:42A–2. Sport and recreational activities; definitions**

As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing, operating or riding snowmobiles, all-terrain vehicles or dirt bikes, and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.

**2A:42A–3. Duty to keep premises safe for entry or use of others**

Except as provided in section [2A:42A–4]:

a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7–7 of the Revised Statutes, and whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, owes no duty to keep the premises safe for entry or use by others for sport or recreational activities, or to give any warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes;

b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the

would be available to the public entity if it were a person. 392 A.2d at 1254. The *Primo* court did not rely on the fact that the defendant was a government body in refusing to grant it immunity. It focused, instead, on the municipality's purposes for maintaining the playground in reaching its decision. It concluded that the government had not acted with the narrow "philanthropic purpose" required in order to be entitled to immunity under the Playground Act.

premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

## 2A:42A–4. Liability towards persons injured on premises

This act shall not limit the liability which would otherwise exist:

a. For willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity;

b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State; or

c. For injury caused, by acts or persons to whom permission to engage in sport or recreational activity was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to. warn of danger.

## 2A:42A–5.1. Liberal construction; inducement to permit use of property for sport and recreational activities

The provisions of [the LLA] shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities.

This occasion marks the first time that a court has construed the LLA since it was amended in 1991. Prior to 1991, however, the LLA had been judicially construed several times. In *Hallacker v. National Bank & Trust Co. of Gloucester County,* the late Judge James Hunter, III of the United States Court of Appeals for the Third Circuit provided a lengthy discourse on the nature and extent of the immunity provided by the LLA:

Prior to the enactment of the LLA in New Jersey, the common law liability of a landowner towards a third party injured upon his premises was determined by the status of the third party, i.e., whether he was a trespasser, a licensee, or an invitee. The LLA abrogated the status-based distinctions of the common law where land is used for recreational purposes....

The common law definitions of trespasser, licensee, and invitee, and the duties owed to them by landowners, are clear under New Jersey law. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965). Generally, a landowner has no duty of care towards a trespasser, except to refrain from willfully injurious acts. · *Renz v. Penn Central Corp.,* 87 N.J. 437, 435 A.2d 540 (1981). A licensee is allowed upon the land by virtue of landowner's consent; he is not invited onto the premises, rather, his presence is "suffered" by the landowner. *Snyder v. I. Jay Realty Co.,* 30 N.J. 303, 312, 153 A.2d 1, 5–6 (1959). With respect to the licensee, the landowner is required neither to inspect his land in order to discover defects, nor to maintain the premises in a safe condition. If the landowner knows of a dangerous condition, however, and believes that his licensee is unlikely to discover it on his own, he is under an obligation either to make the condition reasonably safe or to warn his licensee of the danger. *Handleman v. Cox,* 39 N.J. at 103, 187 A.2d at 712. Finally, an invitee is a party explicitly invited onto the landowner's premises, to whom the landowner owes a duty of reasonable care, and for whom he must provide "a reasonably safe place to do that which is within the scope of the invitation." *Butler v. Acme Markets,* 89 N.J. 270, 275, 445 A.2d 1141, 1143 (1982). Within this class of persons are "business invitees," those invited onto the premises by the landowner for the purpose of conducting business, or whose presence on the land is it direct or indirect source of profit to the landowner. *Id.* ....

The LLA alters the common law duty of landowners by treating all persons who go onto the land of others for recreational

purposes as "trespassers": the landowner is liable only for malicious and wilful acts committed against such persons. *See* N.J.Stat.Ann. § 2A:42A–4(a). However, the legislature carved out an "invitee-like" exception to LLA immunity, by withholding the immunity landowners would otherwise enjoy where they have received consideration for the recreational use of their facilities. *Diodato v. Camden County Park Commission,* 162 N.J.Super. 275, 284, 392 A.2d 665, 669 (Law Div.1978). Strictly construed, the LLA does not alter but preserves the duties set by the common law where a business invitee is harmed on the recreational lands of another.

806 F.2d 488, 490–91 (3d Cir.1986).

The LLA provided landholders with broad tort immunity from suits brought by those injured on his premises. The Act contained only two express limitations to this immunity. It applied only in (1) situations where persons entered another's land for sports or recreational activities and (2) situations where the landowner did not receive consideration for the recreational use of his facilities. Prior to the 1991 amendments, however, New Jersey courts placed further limitations on the immunity that the LLA provided to landowners. To understand these additional limitations, a brief history of the LLA and its construction by New Jersey courts is instructive.

In 1962, the New Jersey legislature enacted the Act that preceded the LLA. It was entitled: "An Act limiting the liability of landowners of agricultural lands or woodlands for personal injuries to or the death of any person while hunting or fishing upon landowner's property." N.J.Stat.Ann.

§ 2A:42A–1 (repealed 1968). This Act was "intended specifically to apply to owners of rural or semi-rural lands, pointedly, agricultural and wooded tracts." *Harrison v. Middlesex Water Co.,* 80 N.J. 391, 403 A.2d 910, 913 (1979).

In 1968, the New Jersey legislature enacted the LLA and repealed its predecessor Act. Among the changes that the legislature made was the substitution of the word "premises" in place of the phrase "agricultural lands or woodlands." The LLA, however, provided no definition for the word "premises." Thereafter, a number of New Jersey Superior Court cases attempted to define the word "premises" in order to determine the scope of the LLA. Relying on the reasoning of *Boileau v. De Cecco,* 125 N.J.Super. 263, 310 A.2d 497, 499–500 (N.J.Super.Ct.App.Div.1973), *aff'd,* 65 N.J. 234, 323 A.2d 449 (1974), these courts held that, despite the use of the broad term "premises," the LLA was "intended to apply to nonresidential, rural or semi-rural land whereon the enumerated sports and recreational activities are conducted." *Odar v. Chase Manhattan Bank,* 138 N.J.Super. 464, 351 A.2d 389, 391 (1976); *see also Primo,* 392 A.2d at 1256; *Diodato v. Camden County Park Comm'n,* 162 N.J.Super. 275, 392 A.2d 665, 669 (Law Div.1978), *overruled by Labree v. Millville Mfg., Inc.,* 195 N.J.Super. 575, 481 A.2d 286, 290 (1984); *Magro v. City of Vineland,* 148 N.J.Super. 34, 371 A.2d 815, 817–18 (App. Div.1977). In determining whether the land at issue was "nonresidential, rural or semi-rural," the courts focused primarily on whether the land was "improved" versus "unimproved." *Primo,* 392 A.2d at 1256–57; *see also Magro,* 371 A.2d at 818 ("undeveloped and unimproved").[3]

---

**3.** The *Primo* court also drew a "distinction between ... natural and artificial injury-producing conditions." 392 A.2d at 1257. It observed that "[i]n all cases in which the municipality has been held immune under the [LLA] the injury causing condition was natural." *Id.* at 1256. It further observed that "[i]n contrast, when the injury causing condition was artificial, no immunity from suit was found under the [LLA]." *Id.; see also Diodato,* 392 A.2d at 670–71 (discussing distinction between natural versus artificial injury-producing conditions). The court held that the LLA did not provide immunity to a municipal landholder where a plaintiff was injured on a

playground slide because the injury causing condition represented "both an improvement *and* an artificial condition." *Id.* (emphasis added).

New Jersey courts later abandoned this distinction between natural and artificial injury-producing conditions in *Labree v. Millville Mfg., Inc.,* 195 N.J.Super. 575, 481 A.2d 286, 290 (1984). In overruling the law division's decision in *Diodato,* the appellate division held that the existence of an artificial condition on a person's land did not "defeat" his immunity under the LLA. *Id.* The court reasoned that "[t]he mention of 'condition of land' in N.J.S.A. 2A:42A–3 is an

Ultimately, the New Jersey Supreme Court confronted the issue of the scope of the LLA in *Harrison v. Middlesex Water Co.*, 80 N.J. 391, 403 A.2d 910, 913 (1979). In *Harrison*, the plaintiff's husband died while attempting to rescue two fifteen year old boys who had fallen through the ice while skating on a reservoir owned by the defendant water company. *Id.* at 911–12. The court reaffirmed the conclusions of earlier courts, holding that the LLA extended protection to only owners of rural or semi-rural tracts of land and "[did] not grant immunity from liability to the owners or occupiers of land situate [sic] . . . in residential and populated neighborhoods." *Id.* at 913. The court then reasoned that the defendant water company was not entitled to immunity under the LLA because the land on which the accident occurred had been "improved" and was "situated in a highly populated suburban community." *Id.* at 915.

Through its definition of the word "premises," New Jersey courts had narrowed the scope of the LLA and had, thus, created an additional limitation to the immunity that it provided landholders. Still, legislative response to this court manufactured limitation to the LLA did not come until after the appellate division decided *Whitney v. Jersey Cent. Power & Light Co.*, 240 N.J.Super. 420, 573 A.2d 509 (1990). In *Whitney*, decedent was killed while driving an all-terrain vehicle along a former railroad right of way. *Id.* at 510. Relying heavily on the language and reasoning of the supreme court in *Harrison*, the court held that the landowner was not entitled to immunity under the LLA. *Id.* at 511. It reasoned that the railroad right of way was "not the kind of 'undeveloped, open and expansive rural [or] semi rural' property, protected by the immunity of the [LLA] as construed in *Harrison*" because it "did not appear to be in a natural condition at the time of the . . . accident." *Id.* It concluded that the LLA's immunity would not extend "to an improved and regularly maintained

property located in a sparsely populated area." *Id.* at 512.

In 1991, in an apparent response to the *Whitney* decision, the New Jersey legislature amended the LLA. First, it amended the definition of "sport and recreational activities" to include "operational or riding snowmobiles, all-terrain vehicles or dirt bikes." N.J.Stat.Ann. § 2A:42A–2. Second, it explicitly extended the scope of the LLA's immunity to include "premises" "whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise." *Id.* § 2A:42A–3(a). Finally, it added a new section to the LLA stating that the "[t]he provisions of [the LLA] shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." *Id.* § 2A:42A–5.1.[4]

 In light of these recent amendments to the LLA, it is clear that the Act provides the Government with immunity against tort liability in this case. First, Willow Pond Park is a "premises" under the LLA since "premises" now includes land "whether or not improved or maintained in a natural condition." Second, Plaintiff had entered and was using the Park for recreational activity. Finally, Plaintiff has presented no evidence that the Government received consideration for her recreational use of its facilities.

Plaintiff argues that the Government should not be able to assert immunity under the LLA since her injuries resulted from an "artificial condition." She contends that an exception to this immunity still exists where an "artificial condition" causes plaintiff's injuries. This argument is without merit, however, since the artificial injury-producing condition exception to immunity under the LLA was explicitly rejected in *Labree v. Millville*

---

additional immunity separate and apart from the general immunity relieving a landowner of a duty to keep the premises safe for entry or use by others for sport or recreational activities." *Id.* It further reasoned that there was "no qualification on this immunity." *Id.*

4. This Court notes the importance of the addition of this new section given New Jersey courts' prior heavy reliance on the principle that "[s]tatutes . . . granting immunity from tort liability . . . should be given narrow range" in construing the LLA. *See, e.g., Harrison*, 403 A.2d at 914–15.

*Mfg., Inc.,* 195 N.J.Super. 575, 481 A.2d 286, 290 (1984). *See supra* note 2.

## III. CONCLUSION

For the reasons stated above, the Government's Motion to Dismiss is granted. The Court will issue the appropriate order.

### ORDER

**THIS MATTER** having come before the court on defendant United States's Motion to Dismiss or for Summary Judgment;

The court having reviewed the record and the submissions of the parties;

For the reasons set forth in the court's opinion of this date;

**IT IS** this 26 day of January, 1998 **HEREBY**

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED.**

No costs.