NEVA RICHARDS, APPELLANT, V. DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLEES.

328 N.W.2d 783

Filed January 14, 1983. No. 81-714.

Richard J. Schicker of Schicker & Leahy, for appellant.

Donald L. Knowles, Douglas County Attorney, and Thomas E. Brown, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

BOSLAUGH, J.

The plaintiff, Neva Richards, was severely injured when she was stabbed seven times by Theodore LaBute while attending a church service at the Pathway of Light Cathedral in Omaha, Nebraska, on December 21, 1977. The attack was entirely unprovoked. LaBute had a history of mental illness and was a stranger to the plaintiff.

This action was brought against Douglas County, Nebraska, to recover damages for the injuries the plaintiff sustained in the stabbing incident. The plaintiff's theory of the case was that an employee of the county had negligently failed to accept and process an "application" for involuntary commitment of LaBute presented by his mother, Mary Theresa LaBute, on or about December 5, 1977.

The fourth amended petition specifically alleged as follows: "11. The direct and proximate cause of the stabbing of Plaintiff by Theodore LaBute was the negligence of the Defendant in the following particular: The clerk of the Douglas County Board of Mental Health failed and neglected to accept and process the Petition of Involuntary Commitment of Theodore LaBute when the same was prepared and presented by Mary D. LaBute on or about December 6, 1977 when it was evident that Theodore LaBute represented a serious threat of harm to himself or others and came within the provisions of 83-1009 R.R.S."

Neb. Rev. Stat. § 83-1009 (Reissue 1981) defines the term "mentally ill dangerous person" as follows: "Mentally ill dangerous person shall mean any mentally ill person or alcoholic person who presents:

"(1) A substantial risk of serious harm to another person or persons within the near future, as manifested by evidence of recent violent acts or threats

of violence or by placing others in reasonable fear of such harm; or

"(2) A substantial risk of serious harm to himself within the near future, as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm, or evidence of inability to provide for his basic human needs, including food, clothing, shelter, essential medical care, or personal safety."

The case was tried upon depositions and other documentary evidence. The trial court found generally for the defendant and dismissed the petition. The order overruling the plaintiff's motion for new trial contained these findings: "The Court finds that plaintiff failed to prove negligence on the part of the defendant by a preponderance of the evidence.

"The Court further finds that assuming the truth of Mary La Bate's [sic] testimony that she went to the offices of the Douglas County Board of Health with the intention of initiating committment [sic] proceedings the evidence is clear that she voluntarily abandoned all efforts to initiate those proceedings by leaving said offices before filing a petition or application for committment [sic]."

The evidence shows that Mrs. LaBute appeared at the office of the board of mental health in Douglas County on or about December 27, 1977, 5 or 6 days after the stabbing incident, and was successful in having her son involuntarily committed. Toby Raznick, an assistant secretary to the board of mental health, with 10 years' experience in that job, assisted Mrs. LaBute with her "application" on that occasion. Mrs. LaBute claims that Mrs. Raznick was the employee she talked to on December 5. Mrs. Raznick testified that she had never seen Mrs. LaBute prior to December 27, 1977. Mrs. Raznick further testified that she had never rejected any "application" or preliminary form for involuntary commitment and had no authority to do so.

Mrs. Raznick testified that the procedure for an involuntary commitment commences with an ex-

planation of the requirements for an involuntary commitment. The person seeking an involuntary commitment of another is given a printed explanation of the requirements for an involuntary commitment. If the person seeking the commitment believes they qualify, he is then asked to fill out an "application," or preliminary form, which requests the essential information concerning the person to be committed, together with the facts concerning overt acts within the last 90 days which he believes show the person to be committed is mentally ill and dangerous to himself or other persons. After the form has been completed, the county attorney's office is notified and the person seeking the commitment is interviewed. The decision as to whether a petition will be filed is made by the office of the county attorney.

Mrs. LaBute testified that she obtained the "application," or preliminary information form, from the county employee and partially completed it, but was unable to list any overt acts which demonstrated that her son was dangerous to others.

Although Mrs. LaBute testified that the employee told her, "I don't think you have a case," she also testified that when the employee gave her the form the employee stated, "Do you understand that he must be dangerous to himself or a danger to others, or you have no case?"

Since 1976, only mentally ill dangerous persons are subject to involuntary commitment. Neb. Rev. Stat. § 83-1037 (Reissue 1981). See, also, *Petersen v. County Board of Mental Health,* 203 Neb. 622, 279 N.W.2d 844 (1979).

It is clear from the evidence that Mrs. LaBute did not believe her son was dangerous. When asked what he had done to hurt someone, Mrs. LaBute said she "didn't know of anything that he had done in that way." When asked specifically if she had any reason to believe Ted was dangerous to others, she said "No."

Mrs. LaBute further testified that to her knowledge Ted had never done anything to indicate he was dangerous to others. She said: "He was very passive and very helpful, friendly, gentle. He was kind to animals and people." She said Ted had never attacked anyone, that she knew of, and had not threatened anybody.

Deo LaBute, the father of Theodore, testified to the same effect. He said he never thought that his son would cause physical harm to or assault anybody or cause physical harm to himself.

With respect to the information form that Mrs. LaBute partially completed, she testified, "I don't know whether I left the paper, I had started to fill it out and I don't know if I left [it] there or threw it away or what happened." Mrs. LaBute admitted that the employee did not tell her not to complete the form. She testified that after the employee gave her the form, she "filled as much as I could, and on the form I noticed that I had to, you know, write the things that he had done that I considered dangerous. And the things he had done that were irrational more than dangerous. So I didn't complete the form. I didn't feel it was of any use." Mrs. LaBute then left the office.

The findings of fact made by the District Court in an action under the Political Subdivisions Tort Claims Act will not be disturbed on appeal unless clearly wrong. *Hume v. Otoe County,* 212 Neb. 616, 324 N.W.2d 810 (1982); *Watson v. City of Omaha,* 209 Neb. 835, 312 N.W.2d 256 (1981); *Miles v. School Dist. No. 138,* 204 Neb. 105, 281 N.W.2d 396 (1979).

The record in this case fully supports the findings made by the trial court. The judgment of the District Court is therefore affirmed.

AFFIRMED.

CLINTON, J., not participating.