JOHN GALLAGHER, PERSONALLY AND AS ASSIGNEE, BY AND THROUGH HIS FATHER AND NEXT FRIEND, MERLE GALLAGHER, APPELLEE, V. OMAHA PUBLIC POWER DISTRICT, APPELLANT.

405 N.W.2d 571

Filed May 8, 1987.   No. 85-774.

Joseph E. Jones of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

Howard A. Kaiman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an action brought under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983), in which the appellee, John Gallagher (Gallagher), a 6-year-old boy, by and through his father and next friend, Merle Gallagher, seeks to recover damages from the appellant, Omaha Public Power District (the District), for personal injuries sustained by Gallagher in a sledding accident occurring on property owned by the District.

Gallagher's petition alleged two purported causes of action. The first sought to recover damages for injuries sustained on January 5, 1983, by Gallagher to his buttock when the sled he was riding struck a piece of metal protruding above the ground on the District's property. The second sought damages for past and future medical bills and loss of earnings.

Trial of the matter was had to the court, and thereafter the district court entered judgment for Gallagher and against the District in the amount of $22,862.70.

The District has assigned a number of errors. They can be separated into two basic groups. The first concerns issues as to whether the district court erred in ruling that the Nebraska Recreation Liability Act did not apply to the specific area where the accident occurred. The second group deals with the negligence questions which gave rise to the judgment.

A brief recitation of the facts is necessary. The property in question, belonging to the District, is a future substation site

located near 16th and Spring Streets in Omaha, Nebraska. It consists of several lots. Most of the property is more or less flat and level. The southwest corner of the property, however, is a steep ravine. On January 5, 1983, Gallagher went across to the District's property for the purpose of sliding down the steep ravine on his plastic sled. While sitting on the sled, sliding down the hill, he was severely cut on his buttock by a piece of metal which cut through the plastic sled. It was stipulated by the parties that the piece of metal that injured Gallagher was found on the District's property. The piece of metal was estimated to weigh 45 to 50 pounds and was embedded in the snow on the ravine. There was no evidence to indicate who had placed the metal object on the ravine or how long it had been there.

The district court found that while the flat area of the property in question was clearly within the protection of the Recreation Liability Act, Neb. Rev. Stat. §§ 37-1001 et seq. (Reissue 1984), the ravine area where the accident occurred was not, because "[t]here is no evidence that that portion of the property was made available to the public for any recreational purpose." We are unable to agree with the district court's finding in that regard.

The evidence discloses that sometime prior to the date on which the accident occurred, the Deer Park Neighborhood Association (Association) sought permission from the District to use the lots for recreational purposes. Following a meeting of the District's board, permission was granted to the Association. Specifically, a letter was sent by the District to the Association on February 25, 1982, extending to the Association the use of all of the lots. Without restriction as to use or area, the letter from the District to the Association read in part:

> The Omaha Public Power District is happy to authorize the use of its *unoccupied substation site* at 16th and Spring Streets to the Deer Park Neighborhood Association. It is our understanding that your Association will be coordinating the *use of this land* for youth sports activities, primarily baseball and softball.

(Emphasis supplied.)

No restrictions were placed on the use of the lots, nor was any portion of the land excluded from use. The entire "unoccupied

substation site at 16th and Spring Streets" was made available for recreational use by the public. While it is true that the District anticipated that the principal use would be for baseball and softball, it is clear that the District did not forbid other uses. Moreover, it is clear that, while the District may have contemplated that the level area would be the principal area used, it is likewise clear that no restrictions were imposed upon the use of the property, and, in fact, the Association was free to use the property in its entirety under its own supervision and direction. This was obviously the intent of the District and the understanding of the Association when the District further indicated in its letter of February 25, 1982, that "pursuant to Nebraska law, OPPD has no liability for accidents that may occur on the property as a result of its use for recreational purposes." While we recognize that one may not avoid liability where the law otherwise imposes such liability, we do believe that a reading of the entire letter of February 25, 1982, which permitted the Association to use the substation site, makes it clear that there were no limitations, either as to area or as to activity. The entirety of the lots was covered for any recreational activity which might be conducted on the site.

As the evidence discloses, there were no fences or other types of barriers erected on or around the ravine to limit activity in that area. In our view, the evidence requires a finding that the entire area was made available, directly or indirectly, to the Association, and therefore to Gallagher. The district court, in concluding that only a portion of the area was made available, was in error.

Section 37-1003 provides:

> Subject to the provisions of section 37-1005, an owner of land who either *directly or indirectly invites or permits* without charge any person to use such property for recreational purposes does not thereby (1) extend any assurance that the premises are safe for any purpose, (2) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

(Emphasis supplied.)

While, during trial, questions were raised by Gallagher regarding the meaning of this act and its application to the District, we believe that we have already resolved all of those questions in favor of the District and against Gallagher. It is clear that the act is not limited to private persons and that governmental subdivisions are "owners" within the meaning of § 37-1003. See, *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984); *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984); *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981).

Furthermore, there is no longer any question in this jurisdiction that the provisions of the Nebraska Recreation Liability Act apply to urban as well as to rural areas. See, *Bailey v. City of North Platte, supra; Garreans v. City of Omaha, supra; Watson v. City of Omaha, supra*.

Therefore, the only question, as noted by the district court, was whether the entirety of the lots was covered by the act or only the flat portion suitable for use as a baseball diamond. As we have indicated, we believe the evidence leads us to the conclusion that the entire area was covered by the act. No one would seriously argue that if, during a softball game, a ball was hit into the area of the ravine, the participants would not have permission from the District to retrieve it. Furthermore, as the record indicates, children in the neighborhood were permitted to enter the flat area by walking across the ravine area, and regularly did so. Nowhere in the letter issued by the District to the neighborhood Association can we find any restrictions imposed regarding the area to be used. The use of the lots in their entirety, including the ravine, was given to the Association for whatever recreational use it might be able to make of the area.

This view is supported by the evidence adduced. The father of the injured child testified that the entire neighborhood used the lots as if they were a public park. It does not require a great deal of imagination to conclude that young children with sleds will attempt to ride them down a hill in a park in the wintertime. We therefore believe that permission was given, if not directly, then certainly indirectly, to use all of the lots in question, including the ravine. For that reason we believe that the

Nebraska Recreation Liability Act did apply to the area upon which the accident occurred.

We have further examined the record in its entirety and find no evidence to support a claim that the District had actual knowledge that a danger existed, and, therefore, the District could not be found to have willfully or maliciously failed to guard or warn against such dangerous condition or structure as required by § 37-1005. As we observed in *Garreans v. City of Omaha, supra* at 493, 345 N.W.2d at 314:

> In order for an action to be willful or wanton, the evidence must show that one acted with actual knowledge that a danger existed and that he intentionally failed to act to prevent the harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the act done or omission to act, and a constructive intention as to the consequences. To constitute willful misconduct there must be actual knowledge, or its legal equivalent, of the peril to be apprehended, coupled with a conscious failure to avert injury. To constitute willful negligence the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury.

In view of the fact that the evidence fails to disclose that the defendant willfully or maliciously failed to guard or warn against the dangerous conditions or structure, the District was relieved of liability as a matter of law. Section 37-1002 provides:

> Subject to the provisions of section 37-1005, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

And, § 37-1003 provides:

> Subject to the provisions of section 37-1005, an owner of land who either directly or indirectly invites or permits

without charge any person to use such property for recreational purposes does not thereby (1) extend any assurance that the premises are safe for any purpose, (2) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

As we have already indicated, § 37-1005 has no application as a matter of law under the evidence in this case.

And, finally, § 37-1006 reads: "Nothing in sections 37-1001 to 37-1008 creates a duty of care or ground of liability for injury to person or property."

We can perceive of no way the Legislature could have been any clearer as to its intention in regard to matters such as those involved in this case.

In reaching our conclusion we do not, as we have not in the past, pass upon the wisdom of the Nebraska Recreation Liability Act. It appears from its history that the passage of the act was an attempt to balance various interests. On the one hand, it makes land available for use without charge, while, on the other hand, it relieves landowners, who would make the land available without charge, of liability. That is a value judgment which the Legislature has properly made and one which this court is not in a position to question.

For these reasons, therefore, the judgment of the district court must be reversed and remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

WHITE, J., dissenting.

I dissent. We have, in three prior cases, held that the Recreation Liability Act is applicable to public entities. *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984); *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984); *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981). While the act provides that a landowner shall not be held liable for ordinary negligence, it may be held liable for malicious or willful actions which result in injury. Neb. Rev. Stat. § 37-1005 (Reissue 1984). Assuming the majority is

correct that the entire site was dedicated to public recreation purposes, the cause should be remanded for further action by the trial court.

The appellee alleged in his amended petition that OPPD's failure to warn of the dangerous condition of the lot donated for recreational purposes constituted a willful and malicious act on the part of the appellant. This issue was not addressed by the district court. The testimony of Mr. and Mrs. Gallagher reveals that OPPD was notified of the presence of debris and trash on the hill which the neighbor children used for sledding, and the evidence at trial revealed that the object on which the boy injured himself was only partially visible above the snow and weeds. Also, then employees of OPPD testified that each time they were on the property, debris was present.

Section 37-1005 provides:

> Nothing in sections 37-1001 to 37-1008 limits in any way any liability which otherwise exists (1) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity, or (2) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land. Rental paid by a group, organization, corporation, the state or federal government shall not be deemed a charge made by the owner of the land.

To constitute willful misconduct there must be actual knowledge that a danger exists and a conscious failure to act to prevent harm which is likely to result. *Garreans, supra.*

Evidence was introduced tending to prove OPPD has had knowledge that a dangerous condition existed and that the injury was reasonably foreseeable, especially in view of the evidence in the record of a similar injury to another neighbor boy sledding on the hill. I would remand for rehearing on the issue of malicious or willful misconduct on the part of OPPD.

SHANAHAN, J., joins in this dissent.