CAROL LOUISE IODENCE AND BRIAN IODENCE, WIFE AND HUSBAND, APPELLANTS, V. CITY OF ALLIANCE, A NEBRASKA MUNICIPAL CORPORATION, APPELLEE.

700 N.W.2d 562

Filed July 1, 2005. No. S-03-528.

James L. Zimmerman, of Sorensen, Zimmerman & Mickey, P.C., for appellants.

Steven W. Olsen, of Simmons Olsen Law Firm, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

Carol Louise Iodence (Iodence) was injured when the vehicle she was driving struck a tree stump on property owned by the City of Alliance, Nebraska. The issue presented in this case is whether the city is immune from liability under the Recreation Liability Act (RLA), Neb. Rev. Stat. §§ 37-729 to 37-736 (Reissue 2004). We hold that it was not immune because Iodence did not enter or use the city's land for "recreational purposes," as that term is defined by § 37-729(3).

## BACKGROUND

On October 14, 1999, Iodence traveled to the Alliance softball complex to watch her son play a YMCA junior football league game. The softball complex is located on land owned by the city and is furnished to the public for sporting and recreational use. Adjacent to the softball fields is an open field. When she arrived at the softball complex, Iodence drove behind several other vehicles along a well-worn, severely rutted dirt path in the open field to park her car. While attempting to avoid the deepest ruts, Iodence struck a tree stump that was hidden in tall grass. Iodence was injured by the sudden stop of her vehicle.

Iodence and her husband, Brian Iodence, filed a negligence action against the city under the Political Subdivisions Tort Claims

Act (Tort Claims Act). The city filed a motion for summary judgment, asserting that it was immune from liability under the RLA. At the summary judgment hearing, the city offered affidavits from two individuals who worked for the Alliance parks department and whose duties included mowing and maintenance for the open field where Iodence was injured. Both generally averred that they did not remember ever seeing the tree stump that caused the accident. They further stated that they did not remember ever receiving complaints of tree stumps in that area that might cause a hazard. The Iodences offered the affidavits of two Alliance residents who generally averred that during the 1990's, the city had planted trees in the open field and had later cut them down, leaving the stumps in place. Both Alliance residents also averred that when they attended events at the softball complex, they had to be careful navigating the open field in order to avoid hitting the tree stumps.

The district court found that "the activity involved, i.e., youth football comes within the [RLA]" and that Iodence "was on the protected premises when the accident occurred and was a recreational user." The court also found no evidence to support imposing liability on the city for willful or malicious conduct under § 37-734(1). Based on those findings, the court found that the city was immune from liability under the RLA and granted the city's motion for summary judgment. The Iodences appealed, and we moved the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

The Iodences' four assignments of error can be more succinctly restated as two: (1) The district court erred in finding that Iodence entered or used the city's land for recreational purposes and (2) the district court erred in finding that the city did not willfully or maliciously fail to guard or warn against a dangerous condition on its land.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dworak v. Farmers Ins. Exch.*, 269 Neb. 386, 693 N.W.2d 522 (2005).

## ANALYSIS

Pursuant to the RLA, an owner of land generally owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. § 37-731. But see § 37-734 (exceptions).

The Iodences argue that the city is not immune for two reasons. First, they contend that the RLA does not apply because Iodence did not enter or use the city's land for "recreational purposes" under § 37-729(3). Second, they argue that the city is liable because of its willful and malicious failure to guard or warn against a dangerous condition on its land. See § 37-734.

At issue in the Iodences' first argument is whether Iodence entered or used the city's land for recreational purposes when she entered the softball complex to watch her son play a youth football game. Recreational purposes is defined in § 37-729(3), which states:

> Recreational purposes includes, but is not limited to, any one or any combination of the following: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, waterskiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, scenic, or scientific sites, or otherwise using land for purposes of the user[.]

We have interpreted § 37-729(3) to be broad enough to include "the normal activities afforded by public parks." *Watson v. City of Omaha*, 209 Neb. 835, 842, 312 N.W.2d 256, 259 (1981). Activities that fall within the definition of recreational purposes include using a playground slide, see *id.*; sledding, *Gallagher v. Omaha Public Power Dist.*, 225 Neb. 354, 405 N.W.2d 571 (1987); and playing softball, *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984).

Our prior "broad" interpretations of § 37-729(3) do not extend to *all* activities. Thus, in *Dykes v. Scotts Bluff Cty. Ag. Socy.*, 260 Neb. 375, 617 N.W.2d 817 (2000), we held that the viewing of livestock exhibits at a county fair was not a recreational purpose.

> [T]he viewing of livestock at a county fair is not substantially similar to the enumerated activities in § 37-729(3). Generally speaking, the activities listed in § 37-729(3) are

more physical than not, generally require the outdoors, and are not "spectator sports." . . . The listed recreational purposes tend to involve activities in which the individual using the land is actively involved.

(Citations omitted.) 260 Neb. at 382-83, 617 N.W.2d at 823.

The city urges us to interpret recreational purpose to include spectating at a youth football game. In support, it cites to several cases from other jurisdictions, namely *Rankey v. Arlington Bd. of Edn.*, 78 Ohio App. 3d 112, 603 N.E.2d 1151 (1992). In that case, a spectator at a track meet was struck by a shotput. The court considered whether the spectator was engaged in a "recreational pursuit," which the court gave "the most liberal of interpretations." *Id.* at 116, 603 N.E.2d at 1154. It concluded that rather than focusing on the specific activity pursued by the plaintiff at the time of the accident, the relevant inquiry should focus on the nature and scope of activities for which the premises are held open to the public. Thus, the *Rankey* court concluded that the spectator, although she was merely an observer and not an active participant, was engaged in a recreational pursuit. Other Ohio cases are in agreement. See, *LiCause v. Canton*, 42 Ohio St. 3d 109, 537 N.E.2d 1298 (1989) (walking through park to reach or leave softball field and watching softball game); *Fetherolf v. State*, 7 Ohio App. 3d 110, 454 N.E.2d 564 (1982) (watching others swim).

We decline to follow the Ohio line of cases. Consistent with the doctrine of ejusdem generis, we have construed § 37-729(3) such that the specific terms listed in the statute restrict the general term of "recreational purposes." *Dykes v. Scotts Bluff Cty. Ag. Socy., supra.* Ohio's liberal interpretation of its recreational use statute and its de-emphasis of the specific activity pursued by the plaintiff are incompatible with our existing precedent. *Dykes* compels us to hold that spectating at a youth football game is not a recreational purpose under the RLA. Iodence's spectating is not substantially similar to the enumerated activities in § 37-729(3), as it is not a physical activity and requires no "active involvement" on the part of Iodence.

Because Iodence did not enter or use the city's land for a recreational purpose, the city is not immune from liability under the RLA. The district court erred in granting summary judgment in

64

favor of the city on that basis. Having so concluded, we need not consider the Iodences' other assignment of error.

CONCLUSION

The district court erred in granting summary judgment in favor of the city under the RLA. The judgment of the court is reversed, and the cause is remanded for further proceedings under the Tort Claims Act.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HENDRY, C.J., concurring.

I concur with the result reached by the majority. I write separately, however, to express my reservations with the continued application of *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981), to provide governmental entities with immunity from liability for ordinary negligence on public land used for recreational purposes. In my view, this court incorrectly construed the Recreation Liability Act (RLA), Neb. Rev. Stat. §§ 37-729 to 37-736 (Reissue 2004), in *Watson* to include governmental entities within its ambit of protection.

The RLA provides owners of land with limited immunity from negligence liability when they make their property available to others for recreational purposes. See §§ 37-730 to 37-734. Section 37-729(2) defines "owner" as a "tenant, lessee, occupant, or person in control of the premises."

The Legislature has not explicitly stated whether an owner of land includes governmental entities as well as private parties, but this court has addressed that issue. On four occasions, we have expressly held that the RLA applies to government and private landowners alike. *Thies v. City of Omaha*, 225 Neb. 817, 408 N.W.2d 306 (1987); *Gallagher v. Omaha Public Power Dist.*, 225 Neb. 354, 405 N.W.2d 571 (1987); *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984); *Watson, supra*. In several other cases, we have tacitly accepted that governmental entities could be owners under this line of cases while deciding whether they were entitled to immunity on some other ground. See, *Veskerna v. City of West Point*, 254 Neb. 540, 578 N.W.2d 25 (1998) (concluding city street could not be temporarily converted to recreational area for purposes of limiting city's liability

under RLA for plaintiff's injury sustained at automobile show); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996) (concluding school district was not immune under RLA from liability for football player's injury because football clinic was not open to public without charge), *abrogated on other grounds, Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51; *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984) (concluding city was protected under RLA when plaintiffs did not pay charge to enter park and city was not guilty of willful or wanton negligence). See, also, *Teters v. Scottsbluff Public Schools*, 5 Neb. App. 867, 884, 567 N.W.2d 314, 327 (1997) (holding that school district was "owner" of land under RLA as "an occupant or a person in control of" recreational camp for weekend but was not immune from liability because it did not hold land open to public), *affirmed in part and in part reversed on other grounds* 256 Neb. 645, 592 N.W.2d 155 (1999) (reversing on separate issue but affirming Nebraska Court of Appeals' holding as to school district without discussion). Compare *Dykes v. Scotts Bluff Cty. Ag. Socy.*, 260 Neb. 375, 617 N.W.2d 817 (2000) (concluding that viewing of livestock exhibits at county fair was not recreational purpose but not being asked nor reaching issue whether agricultural society is governmental entity).

This court first considered whether the RLA applied to governmental entities in *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981). In *Watson*, the plaintiffs sued the city of Omaha for its negligent operation of a city park. The city defended on the ground that it was immune under the RLA. The district court, in determining that the city was liable for negligence, further concluded that the immunity provided by the RLA did not apply to political subdivisions. We reversed.

Although conceding "for the sake of argument" that "the original purpose of the [RLA] was to encourage *private* landowners to offer their lands for use by the public" (emphasis supplied), *Watson*, 209 Neb. at 840, 312 N.W.2d at 258, citing 24 Council of State Governments, Suggested State Legislation 150 (1965), we nonetheless concluded: "Whatever the Legislature's intent was at the time of the enactment of the [RLA], we believe that the definition of owner . . . is sufficiently broad to cover a public entity." 209 Neb. at 841, 312 N.W.2d at 259.

In so doing, we acknowledged that some courts had determined such an interpretation amounted to a grant of " 'redundant immunity' " where a governmental entity already enjoyed sovereign immunity. *Id.* at 840, 312 N.W.2d at 259. We distinguished these cases, however, on the ground that the Legislature had waived sovereign immunity for political subdivisions with the passage of the Political Subdivisions Tort Claims Act (Tort Claims Act). See Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1997 & Cum. Supp. 2004). We then concluded that the Legislature, in enacting the Tort Claims Act subsequently to the RLA, was presumed to have knowledge of the RLA. Because it had not placed any limitation on the definition of "owner," we concluded that the Legislature had intended in both acts "to grant the same rights and privileges to governmental and private landowners alike." 209 Neb. at 841, 312 N.W.2d at 259.

The majority's rationale was challenged in *Watson* and on three other occasions, but the rule has not been questioned since 1987. See, *Thies v. City of Omaha*, 225 Neb. 817, 408 N.W.2d 306 (1987) (White, J., dissenting); *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984) (Grant, J., dissenting; White and Shanahan, JJ., join); *Garreans v. City Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984) (Shanahan, J., dissenting; White and Grant, JJ., join); *Watson, supra* (White, J., dissenting; McCown, J., joins). In *Watson*, the dissent noted:

> The [RLA] was passed in 1965, at which time political subdivisions were immune from liability. It is clear from the legislative history that the act was passed to encourage private landowners to make their land and water areas available for recreational purposes such as fishing and hunting. There was no need to pass such an act to limit the liability of political subdivisions since they were already immune.

209 Neb. at 842, 312 N.W.2d at 259-60.

The dissent further criticized the majority's conclusion that despite the general waiver of immunity in the Legislature's enactment of the Tort Claims Act in 1969, the Legislature was presumed to have knowledge that governmental entities nonetheless had immunity as "owners of land" under the RLA. The dissent argued that this was an implausible construction because the Legislature had no reason to believe a grant of

immunity to public entities would have been necessary when it enacted the RLA. I agree with the dissent's rationale.

In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005). In my view, the majority in *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981), failed to properly construe the RLA for a number of reasons.

First, since its enactment in 1965, the statutorily stated purpose of the RLA has been to "encourage owners of land *to make available to the public* land and water areas for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon." § 37-730 (Reissue 2004). See, also, Neb. Rev. Stat. §§ 37-1001 to 37-1008 (Cum. Supp. 1965) (recodified at Neb. Rev. Stat. §§ 37-729 to 37-736 (Reissue 1998)); *Garreans*, 216 Neb. at 497-98, 345 N.W.2d at 316 (Shanahan, J., dissenting; White and Grant, JJ., join) (noting that through RLA, "the state avoids expensive acquisition of considerable land for public recreational use, that is, state-owned or -leased areas, and in return grants restricted or limited liability to private landowners providing areas for public recreation"). However, "[a] governmental body . . . needs no such motivation" because its principal purpose in owning public recreational land is to make the land available for public use. *City of Pensacola v. Stamm*, 448 So. 2d 39, 41 (Fla. App. 1984). As a result, the legislative purpose of the RLA is meaningless when applied to governmental entities.

Second, the RLA provisions cannot be read consistently to mean that "owner of land" includes governmental entities. Section 37-733 provides that a landowner does not owe a duty of care to keep the land safe or warn others of hazards when the landowner "leases land to the state for recreational purposes." See, also, § 37-1004 (Reissue 1978) (identical language employed at time *Watson* was decided). This provision is nonsensical when it is read to mean that a governmental entity can avoid

liability for ordinary negligence by leasing land to itself. See *Teters v. Scottsbluff Public Schools*, 256 Neb. 645, 652, 592 N.W.2d 155, 160 (1999) (construing § 37-733 to mean that "[i]f the landowner charges for the use of the land, then the landowner is not protected by the [RLA] unless the land is leased to the state *or a subdivision thereof*" (emphasis supplied)). See, also, *Soto v. State*, 269 Neb. at 343-44, 693 N.W.2d at 497 ("[s]tatutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme and so that effect is given to every provision"); *Rauscher v. City of Lincoln*, 269 Neb. 267, 279, 691 N.W.2d 844, 854 (2005) ("it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language"). I agree with the Connecticut Supreme Court that "[b]y carving out different rules for lands leased to the state . . . the statutes suggest that the legislature did not intend public and private 'owners' to be treated identically under the statute." *Conway v. Town of Wilton*, 238 Conn. 653, 665, 680 A.2d 242, 249 (1996).

Third, I concur with the *Watson* dissent that the Legislature had no reason to believe that when the RLA was enacted in 1965, the RLA should have any application to governmental entities which were already immune from liability. See, e.g., *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002) (stating that under Neb. Const. art. V, § 22, state may sue and be sued, but provision is not self-executing, and that legislative action is necessary to waive state's sovereign immunity). In *Watson*, the majority recognized that interpreting "owner" to include governmental entities arguably resulted in a legislative grant of superfluous immunity. The majority, however, relied on the passage of the Tort Claims Act to implicitly conclude that because immunity had since been waived, immunity under the RLA was not redundant. That reliance was unfounded, however, because as noted by the *Watson* dissent, the State did not waive its sovereign immunity under the Tort Claims Act until 1969, 4 years after the RLA was enacted. The State's waiver of sovereign immunity in 1969 fails to negate the argument that a legislative grant of statutory immunity for governmental entities under the RLA in 1965 would have been redundant.

Fourth, interpreting the RLA to include governmental entities as owners allows those entities "to treat two classes of persons injured on public lands differently: it forbids recovery for personal injuries incurred during recreational activities, but permits recovery for personal injuries incurred during non-recreational activities." *Hovland v. City of Grand Forks*, 563 N.W.2d 384, 388 (N.D. 1997) (comparing outcome under this interpretation for plaintiff who was injured while skating on bike path to outcome for hypothetical plaintiff who was injured while riding bike to work on same path). See, also, *Veskerna v. City of West Point*, 254 Neb. 540, 578 N.W.2d 25 (1998) (reasoning that allowing public street to be used for recreational purpose would permit parties injured while crossing street to maintain action against city if they were going to restaurant, but not if they were attending automobile show on street). The North Dakota Supreme Court noted that while this disparate outcome was rational in the context of encouraging private owners to permit public access, "[i]n the context of public access to public lands, the disparate treatment is much harder to understand." *Hovland*, 563 N.W.2d at 388.

Fifth, I disagree with the majority's conclusion in *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981), that the Legislature was presumed to have knowledge a governmental entity could have immunity as an owner under the RLA when enacting the Tort Claims Act. Logically, the Legislature should not have been presumed to have knowledge of our 1981 judicial interpretation of "owner" in *Watson, supra*, when the Tort Claims Act was enacted in 1969. Further, § 13-908 of the Tort Claims Act sets forth a general waiver of immunity subject to certain limited exceptions stated in § 13-910. *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002). None of those exceptions are related to a governmental entity's negligent operation of publicly owned recreational facilities. Thus, interpreting the Tort Claims Act as incorporating immunity under the RLA is essentially a revocation of the State's waiver of immunity in these circumstances. See *Watson*, 209 Neb. at 843, 312 N.W.2d at 260 (White, J., dissenting; McGown, J., joins) ("[w]e have today gutted the [Tort Claims Act]").

Finally, the legislative history of the RLA, as noted by the dissent in *Watson*, fails to support the construction of the act articulated by the *Watson* majority. In enacting the RLA, the Legislature adopted a model act presented by the Council of State Governments in its annual publication, Suggested State Legislation. *Teters v. Scottsbluff Public Schools*, 256 Neb. 645, 592 N.W.2d 155 (1999); 24 Council of State Governments, Suggested State Legislation 150 (1965). This legislative bill was titled "Model Liability Relief Law," and specified that it was "AN ACT to adopt the Model Liability Relief Law . . . ." 1965 Neb. Laws, L.B. 280, ch. 193, p. 589. Like many other state legislatures, the Nebraska Legislature adopted the model law with only minor changes, which are not relevant to this issue. See, *Teters, supra* (noting that RLA closely followed model act but determining that Legislature's slight modifications rendered section dealing with rental-paid exception to RLA's immunity unconstitutionally vague); *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 17 n.18, 507 A.2d 1, 8 n.18 (1986) (resolving unrelated issue but listing 16 states, including Nebraska, that had adopted model act "virtually *verbatim*").

Although "owner" is defined to include a "tenant, lessee, occupant, or person in control of the premises," it does not clarify whether governmental entities were intended to be included when considered in the context of the RLA's origin and purpose. See §§ 37-729 (Reissue 2004) and 37-1008 (Cum. Supp. 1965). Compare 24 Council of State Governments, *supra*, at 151 ("[o]wner means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises"). See, also, *Redinger v. Clapper's Tree Service Inc.*, 419 Pa. Super. 487, 493, 615 A.2d 743, 746 (1992) (deciding separate issue but noting that "[i]n spite of its conciseness and apparent simplicity, the [model act] has managed to weave a tortured tapestry of decisional law in a multitude of jurisdictions in which it as been enacted"). Courts in other jurisdictions, reviewing legislation which included this definition of owner, have nonetheless determined that the act was intended to apply only to private landowners. See, *Conway v. Town of Wilton*, 238 Conn. 653, 680 A.2d 242 (1996) (overruling prior decision holding that "owner" included municipalities and concluding that definition of "owner," which was identical to

model act, was ambiguous when court considered legislative history and public policy underlying statute); *Monteville v. Terrebonne Parish Con. Gov't*, 567 So. 2d 1097 (La. 1990) (noting that state legislature had adopted model act almost without change, including definition of owner; concluding that act applied only to private owners); *Stamper v. Kanawha County Bd. of Educ.*, 191 W. Va. 297, 298 n.4, 445 S.E.2d 238, 239 n.4 (1994) (concluding that state legislation fashioned after model act was intended to benefit private landowners despite legislature's slight modification to specify that owner "shall include, *but not be limited to*, tenant, lessee, occupant or person in control of the premises" (emphasis supplied)). See, also, *Hovland v. City of Grand Forks*, 563 N.W.2d 384 (N.D. 1997).

Section 1 of the model act and § 37-730 of the RLA both provide that their purpose is to encourage "owners of land" to make land and water areas available to the public for recreational purposes by limiting their liability. Although neither the model act nor the Nebraska legislation based on the model act explicitly specified that "owners of land" referred only to private owners, the introductory commentary to the model act leaves no question as to that intent:

Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of *private land* could add to the outdoor recreation resources available. Where the owners of private land suitable for recreational use make it available on a business basis, there may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, in those instances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

In something less than one-third of the states, legislation has been enacted limiting the liability of private owners who make their premises available for one or more public recreational uses. This is done on the theory that it is not

reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accommodating owner receives no compensation or other favor in return.

The suggested act which follows is designed to encourage availability of *private* lands by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from malicious or willful acts of the owner. In the case of lands leased to states or their political subdivisions for recreational purposes, the legislation expressly provides that the owner will have no remaining liability to recreationists, except as such liability may be incorporated in an agreement, or unless the owner is compensated for the use of the land in addition to consideration for the lease.

(Emphasis supplied.) 24 Council of State Governments, Suggested State Legislation 150 (1965). Compare, e.g., *In re Estate of Sutherlin*, 261 Neb. 297, 622 N.W.2d 657 (2001) (relying on commentary to Uniform Probate Code to elucidate section Nebraska Legislature had adopted).

I recognize that this court, in four decisions, has expressly held that a governmental entity was immune from liability for ordinary negligence under the RLA. The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so. *Holm v. Holm*, 267 Neb. 867, 678 N.W.2d 499 (2004). But while the doctrine of stare decisis forms the bedrock of our common-law jurisprudence, it does not require us to blindly perpetuate a prior interpretation of the law if we conclude that it was clearly incorrect. *Id.* As Seneca the Elder noted nearly 2,000 years ago, we can often go astray on a well-trodden and much-frequented road. Given that appellants have not asked this court to reconsider its jurisprudence, I feel constrained to do nothing more than to express my reservations that the road we continue to travel is manifestly wrong.

GERRARD and MCCORMACK, JJ., join in this concurrence.

STEPHAN, J., dissenting.

I respectfully dissent. Although *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981), may rest upon questionable reasoning, as suggested by Chief Justice Hendry in his concurring opinion, it is still the law. A governmental owner of land used for recreational purposes is entitled to the tort immunity conferred by the Recreation Liability Act (RLA), Neb. Rev. Stat. §§ 37-729 to 37-736 (Reissue 2004). *Watson, supra.*

Applying this principle, this court has held that a city had immunity against the claim of a person who stepped in a hole and injured his knee while playing softball in a city park. *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984). Presumably, a public entity would enjoy the same immunity with respect to the claim of a person who is injured while playing football on its land. However, under the majority opinion in this case, there is no immunity with respect to the claim of a person who is injured on public land en route to the bleachers to watch the same football game. Under the reasoning of the majority, the football player is engaged in a recreational activity, but the spectator is not.

This illogical conclusion flows from the decision in *Dykes v. Scotts Bluff Cty. Ag. Socy.*, 260 Neb. 375, 617 N.W.2d 817 (2000), in which the majority applied what in my view is an artificial and overly restrictive interpretation of the phrase "recreational purposes" as used in the RLA. In holding that viewing livestock at a county fair was not substantially similar to the recreational activities specifically enumerated in the RLA at § 37-729(3), the majority reasoned that such activities "are more physical than not, generally require the outdoors, and are not 'spectator sports.'" *Dykes*, 260 Neb. at 382-83, 617 N.W.2d at 823.

I continue to disagree with this analysis, and particularly with the notion that a recreational purpose under the RLA requires some particular degree of physical exertion. For example, fishing is one of the activities specifically enumerated in § 37-729(3) as a recreational purpose, but as one thoughtful fisherman has observed, "God never did make a more calm, quiet, innocent recreation than angling." Izaak Walton, The Compleat Angler 100 (Everyman's Library 1906). Thus, while some may spend their

leisure seated beside a pond waiting for a line to go taut, others enjoy watching an athletic contest from the stands of a municipal ballfield. Neither activity is "more physical than not," but both are pursued for a clearly recreational purpose.

It may be time to reexamine the holding in *Watson, supra*, particularly if it necessitates the strained reasoning and illogical distinctions employed by the majority in this case and *Dykes, supra*. However, as long as we continue to construe the RLA to grant immunity to governmental landowners, it is my view that such immunity extends to claims arising from *all* uses of public lands which can fairly be characterized as recreational in purpose, whether strenuous or sedentary, competitive or contemplative.

I agree with the determination of the district court that Carol Louise Iodence was on public lands for a recreational purpose at the time of her injury and that therefore, the city is immune from liability under the RLA. For the reasons set forth above and in my dissent in *Dykes*, I would affirm the judgment of the district court.

MILLER-LERMAN, J., joins in this dissent.