**Linda PEREIRA**

v.

**Kevin FITZGERALD, in his capacity as Treasurer of the City of East Providence.**

No. 2010–168–Appeal.

Supreme Court of Rhode Island.

June 24, 2011.

Patrick S. Bristol, Esq., for Plaintiff.

Kathryn J. Hopkins, Esq., Cranston, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The plaintiff, Linda Pereira, brought suit to recover damages for injuries she suffered when she fell at Kent Heights Park in East Providence. She now appeals from the entry of summary judgment in favor of the defendant, Kevin Fitzgerald, in his capacity as Treasurer of the City of East Providence (the city). This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On October 29, 2005, Ms. Pereira was lawfully on the premises of Kent Heights Park in East Providence to watch her

grandson's soccer game. Kent Heights Park was, and is, owned, managed, and controlled by the City of East Providence. On October 29, 2005, the soccer field in the park was reserved and being used by the East Providence Parks & Recreation Department for youth soccer; the rest of the park, however, remained open to the public. Ms. Pereira was not charged a fee to enter the park, nor was she charged for parking.

When the soccer game ended, Ms. Pereira began walking back to her car on a walkway in the park. Upon encountering a group of people gathered on the walkway, she deviated from the path and moved onto the grass. While walking across the grass, she fell into a "defect," which she described as "a large unmarked hole/ditch/depression," approximately five inches deep and covered in grass, and she injured her left ankle.

In February 2008, Ms. Pereira filed a personal injury action against the city, alleging that it negligently breached its duty to maintain the park in a reasonably safe condition and that it negligently failed to warn her of an unsafe condition on said premises, both of which caused her to fall and incur injuries. The defendant denied any breach of a duty owed to plaintiff and affirmatively alleged that the city was shielded from liability by virtue of Rhode Island's Recreational Use Statute, G.L. 1956 chapter 6 of title 32.[1]

The city filed a motion for summary judgment, arguing that it was immune from liability and entitled to judgment as a matter of law because this case "fall[s] squarely within the provisions of the Recreational Use Statute." A hearing on the motion for summary judgment was held on February 23, 2010.

In opposition to defendant's motion for summary judgment, plaintiff argued, in a memorandum as well as at the hearing, that the language of the Recreational Use Statute, specifically of § 32–6–2(3), provides protection for a municipality only when it is sued as the "person in control of the premises," and not as the owner. The trial justice rejected this argument, citing as binding precedent this Court's decision in *Hanley v. State*, 837 A.2d 707 (R.I.2003), which he noted had "repeatedly and unani-

---

1. The Recreational Use Statute was created to encourage landowners to make their land available to the public for recreational purposes by limiting the landowners' liability. General Laws 1956 § 32–6–1. Section 32–6–2 of the Recreational Use Statute provides, in pertinent part:

"**Definitions.**
"As used in this chapter:
"* * *
"(3) 'Owner' means the private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of the premises including the state and municipalities;
"(4) 'Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, horseback riding, bicycling, pleasure driving, nature study, water skiing, water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, and all other recreational purposes contemplated by this chapter; and
"(5) 'User' means any person using land for recreational purposes." Section 32–6–3 provides:
"**Liability of landowner.**—Except as specifically recognized by or provided in § 32–6–5, an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:
"(1) Extend any assurance that the premises are safe for any purpose;
"(2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor
"(3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of omission of that person."

mously" been adhered to in subsequent opinions.

The plaintiff further argued, in opposition to the motion for summary judgment, that she was not involved in a "recreational purpose," because she was only a spectator, thus barring the application of the Recreational Use Statute. In rejecting this argument, the trial justice again cited *Hanley*, 837 A.2d at 713–14, in which this Court held that when deciding whether or not to apply the Recreational Use Statute, the relevant inquiry focuses on the nature and scope of the activity for which the premises are held open to the public. The trial justice concluded that the statute was applicable because the nature of Kent Heights Park qualified it as being open to the public for recreational activity, and "the fact [that] the plaintiff was at the soccer game as an observer as opposed to an active participant [was] inconsequential to her status as a recreational user."

Finally, plaintiff argued that the park, specifically the soccer field, was not open to the public and, therefore, the Recreational Use Statute should not apply, citing *Morales v. Town of Johnston*, 895 A.2d 721, 731 (R.I.2006). The trial justice found that the holding in *Morales* was "limited in its applicability and clearly distinguishable from the instant matter." The trial justice also concluded that although the soccer field was not open to the public, the rest of the park was. The trial justice accordingly granted defendant's motion for summary judgment.

A judgment was entered in favor of defendant on March 3, 2010, from which plaintiff timely appealed.

## II

### Standard of Review

■■ "This Court reviews a grant of summary judgment *de novo*, applying the same standards as the motion justice." *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006). "If we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Lacey v. Reitsma*, 899 A.2d 455, 457 (R.I.2006).

## III

### Discussion

■ On appeal, plaintiff first argues that the trial justice erred in granting summary judgment because the Recreational Use Statute does not shield a municipality from liability for injuries that occur on property that the municipality owns. More specifically, plaintiff contends that the definition of "owner" in § 32–6–2(3), *viz.* "the private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of the premises including the state and municipalities," was intended to grant immunity to the state or a municipality only when it is sued as the person in control of the premises, and not as the owner.

In *Hanley*, 837 A.2d at 711–12, this Court was called upon to determine the meaning and definition of "owner," as modified by the 1996 amendment to the Recreational Use Statute.[2] The plaintiffs

---

**2.** At the time of its enactment in 1978, the Recreational Use Statute defined "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." P.L.1978, ch. 375, § 1. The General Assembly, however, amended the statute

in 1996 and altered the definition of "owner" to now include "the private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of the premises *including the state and municipalities.*" Section 32–6–

in *Hanley* argued that private owners are the only fee owners afforded immunity under the Recreational Use Statute and that the state is afforded immunity under the statute only when it holds less than a fee interest in the property. *Id.* at 712. This Court said, however, that "it is clear from the unambiguous language of the 1996 amendment that the legislature intended to include the state and municipalities among owners entitled to immunity under the statute." *Id.* Since then, we have consistently adhered to the holding in *Hanley* that the Recreational Use Statute extends to property owned by the state or municipalities. *See Labedz v. State,* 919 A.2d 415, 417 (R.I.2007) (mem.); *Smiler,* 911 A.2d at 1041; *Cruz v. City of Providence,* 908 A.2d 405, 406–07 (R.I.2006); *Lacey,* 899 A.2d at 457–58.

■ The argument that plaintiff now asserts—that the Recreational Use Statute affords a municipality with immunity only when it is sued as the person in control of the premises and not when it is sued as the owner of the property—is the precise argument that we rejected in *Hanley* and that we repeatedly have eschewed. In that no new theory has been advanced, we reject plaintiff's entreaty and hold once again that the limitation of liability afforded to property owners under the Recreational Use Statute extends to municipalities.

■ The plaintiff further contends on appeal that the trial justice erred in granting summary judgment because plaintiff was not engaged in a recreational activity, as she was only a spectator.

This Court previously has addressed the scope of "recreational purposes," as defined in § 32–6–2(4) of our Recreational Use Statute, in *Hanley,* 837 A.2d at 713–14.[3] In *Hanley,* one of the plaintiffs was camping in a state-owned park and fell when she was walking to her campsite from the park ranger's office; the plaintiffs argued that the Recreational Use Statute should apply only to circumstances "where the injured person was engaged in an activity involving a significant recreational component," and not to walking, which they argued was a "passive activity." *Id.* at 709–10, 712, 713. This Court observed that § 32–6–2(4) provided a nonexclusive list of recreational activities and held that "it should be interpreted liberally." *Id.* at 713. This Court, citing *Rankey v. Arlington Board of Education,* 78 Ohio App.3d 112, 603 N.E.2d 1151, 1154 (1992), stated that:

. "The existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, *the inquiry should focus on the nature and scope of activity for which the premises are held open to the public.* The goal is to determine the character of the premises. *If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of the injury.*" *Hanley,* 837 A.2d at 713–14 (quoting *Rankey,* 603 N.E.2d at 1154).

2(3), as amended by P.L.1996, ch. 234, § 1 (emphasis added).

3. Section 32–6–2(4) provides:
   " 'Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, horseback riding, bicycling, pleasure driving, nature study, water skiing, water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, and all other recreational purposes contemplated by this chapter * * *."

This Court thus concluded that the "plaintiffs' assertion that walking [was] not a recreational purpose under the statute ha[d] no merit." *Id.* at 714. This Court also observed that in *Rankey*, " '[t]he fact that [plaintiff] was at [an] event as an observer, as opposed to an active participant, [was] inconsequential' to her status as a recreational user * * *." *Hanley*, 837 A.2d at 714 (quoting *Rankey*, 603 N.E.2d at 1154).

Since *Hanley*, this Court repeatedly has acknowledged that our focus under the Recreational Use Statute is on the character of the premises and on the nature and scope of the activity for which the premises are held open to the public. *See Bucki v. Hawkins*, 914 A.2d 491, 497 (R.I.2007); *Morales*, 895 A.2d at 731.

The plaintiff argues that our inquiry, under the Recreational Use Statute, as to the nature and scope of activity for which the premises are held open to the public, "could lead to absurd and unintended consequences"; plaintiff proposes that this Court should instead adopt an interpretation that contemplates the "specific plaintiff's purpose for being on the land." The plaintiff relies on *Iodence v. City of Alliance*, 270 Neb. 59, 700 N.W.2d 562 (2005), *overruled on other grounds, Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006), in which the Supreme Court of Nebraska declined to adopt a liberal interpretation of "recreational purposes" and held that a plaintiff watching a youth football game was not engaged in recreational activity. *Iodence*, 700 N.W.2d at 564–65. In light of this Court's unequivocal ruling in *Hanley*, we conclude that plaintiff's reliance on *Iodence* is misplaced.[4]

The trial justice properly observed that in *Hanley*, this Court held that the relevant inquiry focuses on the nature and scope of activity for which the premises are held open to the public, not the specific activity in which plaintiff is engaged at the time of injury, and he appropriately found that the nature of the park here qualifies it as being open to the public for recreational activity. The fact that plaintiff was injured while returning to her car after simply observing a soccer game, as opposed to participating in the soccer game, is insignificant, and the Recreational Use Statute indeed applies here.

■ The plaintiff's final argument on appeal is that the park was not open to the public at the time of her injury and that, therefore, the Recreational Use Statute does not apply. More specifically, plaintiff argues that, similar to *Morales*, 895 A.2d at 724, 731, this case involves an organized soccer game on a soccer field that was not open to the public. The plaintiff concedes that this case is distinguishable from *Morales* in that plaintiff was a spectator and not a participant in the soccer game; she downplays this difference, however, by arguing that parents and grandparents are "vital participants" in youth sporting events because the children are dependent on them for transportation. The plaintiff further acknowledges that this case differs from *Morales* because plaintiff's injuries occurred outside of the actual field of play, but she contends that a safe means of ingress and egress should be considered necessary "extensions" of the playing field.

In *Morales*, 895 A.2d at 730–31, this Court held that a town was liable for injuries suffered by a high school student-athlete participating in a school-sponsored

---

4. It is noteworthy that in *Iodence v. City of Alliance*, 270 Neb. 59, 700 N.W.2d 562, 564–65 (2005), the Nebraska Supreme Court explicitly considered, but rejected, the liberal interpretation used in *Rankey v. Arlington Board of Education*, 78 Ohio App.3d 112, 603 N.E.2d 1151, 1154 (1992), which this Court specifically has chosen to adopt.

sporting event on a municipally owned athletic field, under the active supervision of school officials, explaining that in such a circumstance the student is owed a special duty of care by the town. In *Morales,* we found that the soccer field "was developed, utilized and maintained for school-sponsored athletics" and that it was not open to the public for recreational purposes when the athlete was injured; we thus concluded that the Recreational Use Statute was not controlling. *Id.* at 731. This Court indicated in a footnote, however, that "if [the] plaintiff had come to the [town] soccer field to play a soccer game that was not organized or sanctioned by the school district, [the town] may have been immune under the [R]ecreational [U]se [S]tatute." *Id.* at 732 n. 11.

This Court is of the opinion that *Morales* is inapposite to the case at bar. We agree with the trial justice that "[t]he holding in *Morales* is limited in its applicability and clearly distinguishable from the instant matter." Here, although the soccer field within Kent Heights Park was reserved on the day of the incident by the East Providence Parks & Recreation Department for youth soccer, the area where plaintiff observed the soccer game and the area where she fell were open to the public. Furthermore, in considering the overall nature and scope of activity for which the premises are held open to the public, we find that this park, of which the soccer field makes up only a part, indeed qualifies as being open to the public for recreational activity. This simply is not the same scenario addressed in *Morales,* which invoked a town's duty to a student-athlete playing in an organized sporting event on a designated athletic field.

Accordingly, we affirm the grant of summary judgment in favor of the defendant on the ground that the Recreational Use Statute immunizes the city from liability.

## IV

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.